Charles WILSON et al., Plaintiffs-Appellants,

v.

Joel EDELMAN, Director, Illinois Department of Public Aid, et al., Defendants-Appellees.

Thomas STERLING et al., Plaintiffs-Appellants,

v.

Joel EDELMAN, Director, Illinois Department of Public Aid, et al., Defendants-Appellees.

Nos. 75–2005, 75–2006.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1976.
Decided Sept. 28, 1976.

---

Thomas J. Grippando, James D. Weill, Chicago, Ill., for plaintiffs-appellants.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., David M. Cohen, Civ. Div., Appellate Section, Dept. of Justice, Washington, D. C., Patricia Rosen, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and STECKLER, District Chief Judge.*

SWYGERT, Circuit Judge.

Before this court are two consolidated appeals in which provisions of the Federal Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, and the Illinois Public Aid Code, Ill. Rev.Stat. ch. 23, §§ 3–1 *et seq.* (1973), are challenged as unconstitutional in that they operate to exclude otherwise eligible aged, blind, and disabled persons from public assistance benefits solely because they are

---

* The Honorable William E. Steckler, Chief Judge of the United States District Court for the Southern District of Indiana, is sitting by designation.

either between the ages of twenty-one and sixty-five and reside in public mental hospitals or because they are confined in penal institutions as pre-trial detainees. Claiming that these statutes violate their rights to due process and equal protection of the laws under the Fifth and Fourteenth Amendments, plaintiffs appeal from an order of a three-judge court dismissing their complaints against the Secretary of the United States Department of Health, Education and Welfare for lack of jurisdiction and sustaining the constitutionality of the state statute in question. Because there are significant jurisdictional issues raised in these appeals, it is helpful to trace the procedural history of these cases.

### No. 75–2005, Wilson, et al. v. Edelman, et al.

On December 5, 1973 plaintiffs filed a three count complaint in the district court seeking declaratory and injunctive relief individually and on behalf of all persons who are otherwise eligible for aid to the disabled pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* and Chapter 23, §§ 3–1 *et seq.* of the Illinois Revised Statutes (1973) under the program of Aid to the Aged, Blind and Disabled (AABD), but are denied such assistance because they are hospitalized in a public mental institution.[1]

Count I of the complaint challenged the constitutionality of Ill.Rev.Stat., ch. 23, § 3–1.4 (1973) and regulation IV–10–8 of the Illinois Department of Public Aid Manual which provide that needy and disabled patients residing in public mental institutions are ineligible for aid to the aged, blind, and disabled so long as they remain in such institutions.[2] Jurisdiction was based on 28 U.S.C. §§ 1343(3) and (4) and 42 U.S.C. § 1983. Named as defendant in this count was the director of the Illinois Department of Public Welfare (hereinafter referred to as the state defendant).

Counts II and III of the complaint were directed against the Secretary of the United States Department of Health, Education and Welfare (hereinafter referred to as the Secretary or federal defendant). Count II of the complaint challenged the constitutionality of provisions of the Social Security Act which were in effect prior to January 1974 and which operated to preclude patients in public mental institutions from receiving disability assistance payments under the joint federal-state programs for Aid to the Aged, Blind or Disabled, 42 U.S.C. §§ 1355 and 1385(a).[3] Count III of the complaint challenged the constitutionality of 42 U.S.C. § 1382(e)(1)(A), as effective January 1, 1974.[4] Plaintiffs claimed that

---

1. On August 5, 1975, following oral argument in this case, plaintiffs filed a motion to alter the definition of the proposed class which was opposed by the federal defendant. *See* discussion, p. 1273, *infra.* Prompted by the United States Supreme Court's recent decision in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1976), plaintiffs sought to define the proposed class seeking relief against the federal defendant as "all persons, otherwise eligible, who have been terminated from benefits under Title XVI or who have applied for Supplemental Security Income benefits under Title XVI and have been denied such benefits solely because they are between the ages of 21 and 65 and hospitalized in a public mental institution."

2. Ill.Rev.Stat., ch. 23, § 3–1.4 (1973) provides: Residents of municipal, county, state or national institutions for the mentally ill or for the tuberculous, or residents of a home or other institution maintained by such governmental bodies when not in need of institutional care because of sickness, convales-

cence, infirmity, or chronic illness, and inmates of penal or correctional institutions maintained by such governmental bodies, may qualify for aid under this Article only after they have ceased to be residents or inmates, but they may apply in advance of their discharge for aid to be granted effective with the month in which they leave the institutions.

3. In their brief on appeal, plaintiffs indicate that since 42 U.S.C. §§ 1355 and 1385(a) (1970) have been replaced by the statutory provision challenged in Count III, Count II is therefore no longer at issue.

4. 42 U.S.C. § 1382(e)(1)(A) provides: *Limitation on eligibility of certain individuals.* Except as provided in subparagraph (B), no person shall be an eligible individual or eligible spouse for purposes of this subchapter with respect to any month if throughout such month he is an inmate of a public institution.

the effect of this statute was to bar otherwise eligible persons between the ages of twenty-one and sixty-five [5] from receiving benefits under the federally funded Supplemental Security Income Program, 42 U.S.C. §§ 1381, *et seq.*, solely because of their status as patients in public mental institutions. Jurisdiction of Counts II and III was based on 28 U.S.C. §§ 1331 (federal question), 1337 (commerce), 1361 (mandamus), and 5 U.S.C. § 702 (the Administrative Procedure Act).

Named as plaintiffs in the complaint were Charles Edward Wilson and Michael Irene Welch. According to the complaint, plaintiff Wilson was admitted to Elgin Mental Health Center, a facility of the Illinois Department of Mental Health, in October 1973. No welfare benefits were discontinued as a result of Wilson's confinement in the mental health center since he had not been a recipient of such benefits prior to his entry. Plaintiffs claimed, however, that Wilson was eligible for aid to the disabled under both the federal and state statutes and was unable to obtain said assistance solely because of his hospitalization in a public mental hospital.

Unlike Wilson, plaintiff Welch had been a recipient of disability assistance prior to her confinement in a public mental hospital as alleged in the complaint. Welch's assistance was terminated in October 1973 when she was admitted for the third time to Chicago Read Mental Health Center, an inpatient facility of the Illinois Department of Mental Health. Though it is not clear from the complaint whether plaintiff Welch received a notice or statement of reason for the termination of her assistance, plaintiffs claimed that Welch's assistance was terminated solely because of her admission to the public mental hospital.

On March 18, 1974 an amended complaint was filed adding several additional named plaintiffs to this action and noting plaintiff Welch's discharge from Chicago Read Mental Health Center in January 1974. The additional named plaintiffs included Maudie Simmons, James Armstrong, Gomer Johnson, Samuel Birdsell, Donald Clark, and John Kiernan Turney. According to the amended complaint, the additional named plaintiffs, like plaintiff Welch, had been recipients of disability assistance prior to their admission to public mental hospitals and discontinued receiving such assistance solely because of their status as patients in public mental institutions. With the exception of plaintiffs Simmons and Turney, all plaintiffs were admitted to public mental hospitals and discontinued receiving assistance payments on or before January 1, 1974.[6] The amended complaint also alleged

---

**5.** Plaintiffs claim that the age discrimination is the result of 42 U.S.C. § 1382(e)(1)(B) and the Medicaid Program, 42 U.S.C. § 1396 *et seq.* 42 U.S.C. § 1382(e)(1)(B) provides in pertinent part that:

> In any case where an eligible individual or his eligible spouse (if any) is, throughout any month, in a hospital, extended care facility, nursing home, or intermediate care facility receiving payments (with respect to such individual or spouse) under a State plan approved under subchapter XIX of this chapter, the benefit under this subchapter for such individual for such month shall be payable . . . (i) at a rate not in excess of $300 per year [$25 per month].

The Title XIX program referred to in section 1382(e)(1)(B) is the Medicaid Program.

Benefits available under Medicaid include:
— in-patient hospital services (other than services in an institution for tuberculosis or mental disease) in both public and private hospitals.
— skilled nursing home services.
— intermediate care facility services, including services in public institutions for the mentally retarded.
— in-patient hospital services and skilled nursing home services for individuals 65 years of age or over in an institution for tuberculosis or mental diseases.
— in-patient psychiatric hospital services for individuals under age 21.

42 U.S.C. § 1396d(a)(1), (4), (14), (15), (16).

Thus, to the extent that the Medicaid scheme is incorporated into the Supplemental Security Income Program as indicated above, plaintiffs claim that they are excluded from Supplemental Security Income payments normally made to institutionalized persons solely because they are aged twenty-two through sixty-four and in a public mental hospital.

**6.** Although the complaint alleged that plaintiff Turney's benefits ceased in January 1974, Turney's affidavit, filed in support of plaintiffs' motion for summary judgment, stated that he was receiving assistance benefits until May 26,

that in some instances assistance payments were terminated without a prior notice and hearing. The complaint did not specify, however, which plaintiffs were denied such process.

As a result of their exclusion from eligibility for disability assistance, plaintiffs claimed the denial of due process and equal protection of the laws. The complaint alleged that disability assistance payments were intended to provide needy recipients with money to purchase personal essentials, clothing, and transportation as well as food and shelter. The mere fact of confinement in a public mental hospital, plaintiffs claimed, did not alleviate an indigent patient's need to purchase items such as newspapers, stamps, stationery, cosmetics, carfare, clothing, etc.[7] Thus, plaintiffs alleged that the challenged statutes constituted an irrebuttable presumption and arbitrary classification which operated to deprive them of their constitutional rights under the Fifth and Fourteenth Amendments. In their prayer for relief, plaintiffs requested that the district court: (a) enter a declaratory judgment finding the challenged statutes and regulations unconstitutional, (b) issue a mandatory injunction requiring the state defendant to provide plaintiffs with

aid to the disabled "to the extent that the facility in which they are hospitalized fails to provide all the basic needs" met by the state's program of Aid to the Aged, Blind and Disabled, and requiring the federal defendant to provide aid to the disabled or Supplemental Security Income to those persons who are otherwise qualified for such assistance, but are between the ages of twenty-one and sixty-five and are hospitalized in public mental institutions, and (c) grant plaintiffs restitution for the monies wrongfully denied them. Plaintiffs also requested that a three-judge court be convened to decide this case pursuant to 28 U.S.C. §§ 2281 and 2282.[8]

On July 13, 1974 plaintiffs filed a motion for leave to proceed as a class and for summary judgment. Both defendants opposed the motion by filing motions to dismiss, or in the alternative, cross motions for a summary judgment. The state defendant contended that plaintiffs lacked standing to maintain a class action; that plaintiffs' claims were moot; that there existed no actual controversy upon which declaratory relief could be granted; and that the Eleventh Amendment constituted a bar to any retroactive relief which plaintiffs sought from the state.[9]

---

1974 during which time he was hospitalized in a public mental institution. In addition, the amended complaint alleged that Maudie Simmons' public assistance terminated on February 27, 1974 when she was admitted to Chicago Read Mental Health Center.

7. Although public mental institutions provide clothing to inmates, plaintiffs claimed that such clothing was of an inferior quality and illfitting.

8. 28 U.S.C. § 2281 provides:
   Injunction against enforcement of State statute; three-judge court required
   An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

28 U.S.C. § 2282 provides:
   Injunction against enforcement of Federal statute; three-judge court required
   An interlocutory or permanent injunction restraining the enforcement, operation or execution of any, Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

9. The crux of the state defendants' motion to dismiss was that the passage of Public Law 92–603, which became effective January 1, 1974 and which created the federally-funded Supplemental Security Income Program, replaced state programs for Aid to the Aged, Blind and Disabled, thereby terminating any interest the state might have had in the controversy giving rise to plaintiffs' lawsuit.
   The district court disposed of this claim in its order granting plaintiffs' motion to convene a three-judge court pursuant to 28 U.S.C. § 2281. The court stated that since a single judge may dismiss a suit lacking adverseness between the

The Secretary opposed plaintiffs' motion for summary judgment by raising issues concerning jurisdiction, impropriety of class relief, and the absence of any constitutional infirmity in the challenged statutes.

In response to defendants' motions, particularly the Secretary's claim that the court lacked subject matter jurisdiction over the complaint, plaintiffs filed a reply brief alleging an additional jurisdictional basis for their claims against the Secretary. Specifically, plaintiffs stated, "If it is necessary to reach the issue of jurisdiction under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) incorporating it into the SSI Program, plaintiffs hereby move to amend their amended complaint on its face to allege such jurisdiction in Count III, paragraph 2."

After extensive briefing by all parties, the district court granted plaintiffs' motion to convene a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2282 and ordered that plaintiffs' case be reassigned to the calendar of the Honorable Thomas R. McMillen, United States District Judge for the Northern District of Illinois, before whom was pending the related case of *Sterling, et al. v. Edelman, et al.*, No. 75–2006.

### No. 75–2006, Sterling, et al. v. Edelman, et al.

The two count complaint in this action was filed on September 11, 1973 by Thomas Sterling individually and on behalf of all other needy persons who are incarcerated in penal institutions because they are accused of a crime and are unable to post bond, but who are otherwise eligible for public assistance pursuant to the Illinois program of Aid to the Aged, Blind and Disabled, Ill. Rev.Stat., ch. 23, § 3–1 *et seq.* (1973) and

Title XVI of the Federal Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff's amended complaint was filed on January 9, 1974.

In Count I of the amended complaint, plaintiff attacked the constitutionality of Ill.Rev.Stat., ch. 23, § 3–1.4 (1973) and the Illinois Department of Public Aid Handbook which provide that persons confined in local, state, or federal penal and correctional institutions are ineligible for AABD assistance while awaiting trial.[10] The Director of the Illinois Department of Public Aid was named as defendant in this count and jurisdiction was based on 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202.

Count II of the amended complaint was directed against the Secretary of the United States Department of Health, Education and Welfare and challenged the validity of 42 U.S.C. §§ 1355, 1385, and 1382(e)(1)(A) insofar as these provisions prohibited federal assistance to plaintiff and the class he purported to represent.[11] Like Counts II and III in the *Wilson* complaint, plaintiff alleged that jurisdiction of this court was conferred upon the court by 28 U.S.C. §§ 1331, 1337, 1361 and 5 U.S.C. § 702.

The only named plaintiff in the amended complaint was Thomas Sterling who, disabled because of a heart condition, received disability assistance from the Illinois Department of Public Aid until March 1973 when he was arrested, charged with a crime, and incarcerated in the Cook County Jail to await trial. The complaint alleged that the termination of Sterling's assistance was due solely to his incarceration as a pre-trial detainee and took effect without any procedural due process hearing.[12]

---

parties and since the existence of a "case or controversy" is required by the Constitution and statutes pertaining to jurisdiction, "a finding that the complaint alleges a claim which is sufficient to give . . . [the court] . . . jurisdiction, disposes of . . . [the state's] . . . claim that there is no controversy upon which declaratory relief can be granted." We note that on appeal the state defendant does not argue that the district court erred in this conclusion.

**10.** *See*, n. 2, *supra.*

**11.** *See*, n. 4, *supra.*

**12.** The record indicates that Sterling received notice of the termination of his disability assistance payments when he was incarcerated in Cook County Jail to await trial. The "Notice of Change" sent to Sterling informed him of the state's intent to cancel his case while he was in jail. The notice further stated that, "You may reapply when you are released."

Plaintiff further alleged that the termination of his disability assistance payments caused him to suffer irreparable injury through the lack of adequate funds to purchase necessities which are required for a minimal standard of decency and health and which are available for purchase in the jail commissary. Additionally, plaintiff claimed that without his disability assistance, he was unable to afford the expense of civilian clothing and, therefore, had to wear prisoner uniforms issued by the jail. Thus, like plaintiffs in *Wilson*, Sterling claimed that the challenged statutes violated the Fifth and Fourteenth Amendments of the United States Constitution.

Plaintiff requested the same relief as plaintiffs in *Wilson*, including declaratory judgment, injunctive relief, and restitution for monies wrongfully denied him. Plaintiff also requested that a three-judge court be convened and that a class be certified pursuant to Fed.R.Civ.P. 23.

On March 7, 1974, plaintiff filed a motion for summary judgment. As in *Wilson*, defendants opposed this motion—the state defendant by filing a motion to dismiss and the Secretary by filing a motion to dismiss or alternatively for summary judgment. In addition to the claims raised in *Wilson* for dismissing the complaint, both the state and federal defendants argued that Sterling's conviction and sentence by the Cook County

Criminal Court in March 1974 rendered the case moot.[13]

In response to defendants' claims of mootness, plaintiff filed a second amended complaint on May 2, 1974 adding two additional named plaintiffs. The complaint alleged that William Earl Lewis and May Brimage received disability assistance under the Supplemental Security Income Program until March 1974 and February 1974, respectively, "when they were arrested, charged with a crime, and incarcerated in the Cook County Jail to await trial." The complaint further alleged that the sole reason for the termination of their disability assistance was their incarceration as pretrial detainees and that such termination violated plaintiffs' Fifth and Fourteenth Amendment rights.

This action was then consolidated with *Wilson* and a third related case for purposes of oral argument which took place before a three-judge court on June 27, 1975.[14] On September 17, 1975 the three-judge court entered its decision in these cases.

*Decision of the District Court*

In its decision of September 17, 1975 granting defendants' motions to dismiss, the district court found that all of the plaintiffs would be eligible for Supplemental Security Income benefits, but for the requirements of ch. 23, § 3–1.4 of the Illinois Revised Statutes (1973) and 42 U.S.C.

---

**13.** Defendants' claims of mootness were supported by an affidavit of the Director of the Cook County Department of Corrections indicating that Sterling was no longer a pretrial detainee since his conviction and sentence by the Cook County Criminal Court in March 1974.

**14.** *Wilson* and *Sterling* were argued with *Hands v. Edelman*, Civil No. 74 C 2276 (N.D.Ill. 1975), the latter of which was not appealed.

**15.** We note that large portions of the district court opinion are based on a significant misunderstanding of the nature and administration of the federal Supplemental Security Income Program and former state programs of Aid to the Aged, Blind and Disabled. This misunderstanding is evidenced by substantially incorrect statements in the district court opinion, such as the court's finding that plaintiffs would be eligible for Supplemental Security Income benefits

but for the Ill.Rev.Stat., ch. 23, § 3–1.4 (1973) and 42 U.S.C. § 1382(e)(1)(A). (As explained below, the state statute does not determine plaintiffs' eligibility for Supplemental Security Income benefits.) In order to clarify the record in these cases, we set forth the statutory framework under which plaintiffs' claims arose.

Title XVI of the Social Security Act, entitled "Supplemental Security Income for the Aged, Blind and Disabled" (SSI), became effective January 1, 1974. This legislation dramatically altered the previous governmental responsibilities for providing public assistance to the aged, blind, and disabled.

Prior to January 1, 1974 the Social Security Act of 1935, 42 U.S.C. §§ 1381 *et seq.*, provided for assistance to the aged, blind, and disabled pursuant to three federal programs: (1) Old Age Assistance, 42 U.S.C. §§ 301 *et seq.*, (2) Aid to the Blind, 42 U.S.C. §§ 1201 *et seq.*, and (3) Aid to the Permanently and Totally Dis-

§ 1382(e)(1)(A).[15] However, the court dismissed plaintiffs' claims against the Secretary for lack of jurisdiction on the ground that plaintiffs had failed to exhaust their administrative remedies prior to commencing suit in the district court as required by 42 U.S.C. § 1383(c)(3), the jurisdictional grant of the Supplemental Security Income Act.[16] Having failed to comply with the prerequisites to jurisdiction under 42 U.S.C. § 1383(c)(3), plaintiffs were unable to proceed against the Secretary in the district court under any other jurisdictional basis. The district court reasoned that since 42 U.S.C. § 1383(c)(3) authorizes judicial review of final determinations of the Secretary "as provided" in 42 U.S.C. § 405(g) and "to the same extent" as determinations reviewed under section 405 of that title, the Supreme Court's opinion in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 47 L.Ed.2d 522 (1975) [*Salfi*], holding that 42 U.S.C. § 405(h) precludes a court from reviewing a final determination of the Secretary except as provided under section 405(g), required dismissal of plaintiffs' claims against the Secretary. *See* discussion pp. 1269–1271, *infra*. Based on this holding, the district court denied certification of plaintiffs' classes. The court also denied the *Wilson* plaintiffs' motion to amend the description of the class, stating that said motion attempted "to raise a new issue and was not timely filed." [17]

abled, 42 U.S.C. §§ 1351 *et seq.* These programs constituted a federal-state cooperative program of aid to the aged, blind, and disabled whereby substantial federal reimbursement was made available under the Act to any state with a plan for providing assistance to the aged, blind, or disabled. While certain minimum federal requirements had to be met in order to obtain the promised federal reimbursement, the programs were legislated, administered, and operated entirely by state and local agencies.

Pursuant to the federal statute, Illinois enacted a plan under which assistance was given to the aged, blind, and disabled. Ill.Rev.Stat., ch. 23, §§ 3–1 *et seq.* (1973). Contained within the Illinois program was the restriction that otherwise eligible persons could not receive benefits if confined in a public mental hospital or penal institution. Ill.Rev.Stat.1973, ch. 23, § 3–1.4. This provision was in accord with a similar provision in the federal statute. 42 U.S.C. § 1385(a)(2).

The Supplemental Security Income Program substantially displaced the former federal and state programs providing assistance to the aged, blind, and disabled. Public Law 92–603, 42 U.S.C. §§ 1381 *et seq.* The new law provided for a uniform federal minimum assistance grant which is entirely federally funded and is administered by the Social Security Administration of the Department of Health, Education and Welfare. The federal Supplemental Security Income Program also contained a provision precluding otherwise eligible persons from receiving benefits if they reside in a public mental hospital or penal institution. 42 U.S.C. § 1382(e)(1)(A).

To assure that payments to former AABD recipients would not be reduced as a result of the new federal program, Congress enacted Public Law 93–66, § 212 93d Cong., 1st Sess. (1973), which amended the Supplemental Se-

curity Income Program by imposing a mandatory requirement on the state, as a condition of participation in federal-state Medicaid Program (Title XIX of the Social Security Act), to supplement the monthly SSI payments to persons who were receiving assistance as of December 1973 at a level higher than the flat federal assistance grant so long as their needs for assistance did not change. This "mandatory state supplement" is funded by the state. States have a choice of having these "mandatory state supplements" administered by the Secretary of Health, Education and Welfare or by their own agencies. Illinois originally chose the former, but in October 1974, switched "state supplements" to its own administration. See *Vargas v. Trainor*, 508 F.2d 485 (7th Cir. 1974), *cert. denied*, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975).

16. 42 U.S.C. § 1383(c)(3) provides:

The final determination of the Secretary after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Secretary's final determinations under section 405 of this title; except that the determination of the Secretary after such hearing as to any fact shall be final and conclusive and not subject to review by any court.

17. Though the district court did not have to consider the merits of plaintiffs' claims against the Secretary, the court stated that if it were to decide the issue raised in the *Wilson* complaint, i. e., whether the Social Security Act discriminated against patients hospitalized in a public mental institution who were between the ages of twenty-one and sixty-five, its opinion was "that the age discrimination was rational, since the young and the old presumptively have greater need than those in the middle age group."

With respect to plaintiffs' claims against the state defendant, the district court determined that it possessed jurisdiction as to those claims and certified plaintiffs as a class pursuant to Fed.R.Civ.P. 23(b)(2).[18] However, in reaching the merits of plaintiffs' constitutional challenge to the state statute, the court held that the denial of benefits to plaintiffs' class was both rational and constitutional. According to the court, a state is obligated to supply only the vital needs of indigent persons in accordance with constitutional limits. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Since a person incarcerated as a pretrial detainee or hospitalized in a public mental institution is provided with food, shelter, clothing, and medical care by the state, the court concluded that the denial of disability assistance to such individuals constituted neither an irrational classification nor an irrebuttable presumption in violation of plaintiffs' constitutional rights.[19] Convinced of the constitutionality of Ill.Rev.Stat., ch. 23, § 3–1.4 (1973), the court granted the state defendant's motion to dismiss. Plaintiffs filed timely notices of appeal from the district court's order.[20]

Having set forth the history of these cases and the statutory basis underlying plaintiffs' claims, it is appropriate to turn to consideration of the issues which plaintiffs raise on appeal.

### Claims Against the Federal Defendant[21]

On appeal plaintiffs argue that the district court improperly applied the holding in *Salfi* to the present cases and that the court erred in refusing to certify a class with respect to the claims against the federal defendant. Plaintiffs also claim that this court should reach the merits of these cases, pursuant to 28 U.S.C. § 2601, and declare 42 U.S.C. § 1382(e)(1)(A) unconstitutional insofar as it bars otherwise needy and disabled persons from receiving Supplemental Security Income payments solely because of their incarceration as pretrial detainees or their hospitalization in public mental institutions. Because we find that the district court possessed jurisdiction of plaintiffs' claims against the federal defendant under 42 U.S.C. § 1383(c)(3), and that the court should have considered plaintiffs' motion to alter the class, we reverse the order of the district court dismissing plaintiffs' complaint against the federal defendant for lack of jurisdiction and, for reasons discussed below, remand this action to a single-judge district court. *See* n. 29, *infra*.

In *Salfi*, the United States Supreme Court reversed a district court judgment which held that federal question jurisdiction, 28 U.S.C. § 1331, existed over a constitutional claim against a provision of Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, Old Age, Survivors and Disability

18. In certifying the class, the district court rejected defendants' mootness claim by concluding that this was the kind of case where class membership was fluid and constantly changing and that, therefore, the plaintiffs should not be put to the unprofitable task of finding replacements every time one of them was released by the state. The court stated, "It is common knowledge that inmates of penal institutions and mental hospitals have a high rate of recidivism and that therefore the denial of S.S.I. benefits to them is capable of repetition, yet evading review. *Roe, et al. v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974)."

It should be noted, however, that the district court's certification of the class as "persons who have been deprived of S.S.I. payments by the State defendant because of institutionalization" demonstrates the court's misunderstand-

ing of the Supplemental Security Income Program.

19. It should be noted that the district court indicated that even if plaintiffs were entitled to relief against the state defendant, said relief could be prospective only. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

20. The scope of plaintiffs' notices of appeals is discussed at n. 31, *infra*.

21. There is no question concerning this court's jurisdiction to review the decision of a three-judge court dismissing a claim against the federal defendant for lack of jurisdiction. *Gonzales v. Automatic Employees Credit Union*, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974); *MTM, Inc. v. Baxley*, 420 U.S. 799, 95 S.Ct. 1278, 43 L.Ed.2d 636 (1975); *Valentino v. Howlett*, 528 F.2d 975 (7th Cir. 1976).

Insurance (OASDI). The Court held that federal question jurisdiction was barred in cases concerning Title II of the Act by an explicit provision in that title, 42 U.S.C. § 405(h), which provides that "no action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 [now 28 U.S.C. § 1331] to recover on any claim arising under this subchapter."[22] The Court went on to hold, however, that jurisdiction of plaintiffs' claims existed under 42 U.S.C. § 405(g), Title II's own jurisdictional grant.[23]

In reaching this holding the Court discussed the exhaustion requirement embodied in section 405(g) which grants jurisdiction to review "any final decision of the Secretary made after a hearing to which he was a party . . . ." The Court indicated that although the filing of an application for benefits under the statute is a minimal nonwaivable condition of jurisdiction under section 405(g), the finality of the Secretary's decision with respect to judicial review depends as much on the substantive nature of the issue presented as on the degree of exhaustion of administrative remedies. *See also Mathews v. Elridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In so ruling, the Court stated:

> Once the Secretary has satisfied himself that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine, and that the claim is neither otherwise invalid or cognizable under a different section of the Act, . . . further

exhaustion would not merely be futile for the applicant, but would also be a commitment of administrative resources unsupported by any administrative or judicial interest. *Salfi,* 422 U.S. at 767, 95 S.Ct. at 2467.

Thus, "*Salfi* makes it clear that the 'made after a hearing' language [of 42 U.S.C. § 405(g)] may be disregarded if the Secretary's decision rested on a legal ground that did not necessitate a hearing." *Jimenez v. Weinberger,* 523 F.2d 689, 695 n. 10 (7th Cir. 1975). Since the Secretary in *Salfi* failed to raise any challenge to the sufficiency of plaintiffs' exhaustion, such failure was deemed a waiver of the exhaustion requirements of section 405(g) and the Supreme Court proceeded to reach the merits of the case.

■ In light of the fact that 42 U.S.C. § 1383(c)(3) authorizes judicial review of determinations of the Secretary under the Supplemental Security Income Program in accordance with the conditions for review set forth in 42 U.S.C. § 405(g), the order of the district court dismissing plaintiffs' claims against the Secretary must be reversed if plaintiffs satisfied the jurisdictional prerequisites of section 405(g) as discussed by the Supreme Court in *Salfi.* Although plaintiffs here do not contend that they complied with the literal requirement of section 405(g) by seeking review of a "final decision of the Secretary made after a hearing to which he was a party," plaintiffs do contend that the termination of their ongoing benefits upon incarceration as pretrial detainees or hospitalization in pub-

**22.** 42 U.S.C. § 405(h) reads in its entirety:

*Finality of Secretary's decision.* The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.

**23.** 42 U.S.C. § 405(g) in relevant part provides:

*Judicial review.* Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

lic mental institutions constituted a sufficiently final decision of the Secretary to satisfy section 405(g)'s nonwaivable condition of jurisdiction. Furthermore, plaintiffs argue that any requirement of exhaustion of administrative remedies was waived by the federal defendant in the district court and that, therefore, the court possessed jurisdiction over plaintiffs' claims under 42 U.S.C. § 1383(c)(3) as it incorporates section 405(g). In light of the district court's jurisdiction over their claims against the Secretary, plaintiffs also contend that the court erred in refusing to consider their requests for class relief. In order to determine the propriety of the district court's holding, then, it is necessary to decide whether plaintiffs satisfied the nonwaivable prerequisite to jurisdiction under section 405(g) and, if so, whether the Secretary waived any further exhaustion requirement as was the situation in *Salfi*.[24]

In deciding whether plaintiffs satisfied section 405(g)'s nonwaivable jurisdiction prerequisite, we note that on appeal plaintiffs have abandoned their challenge to the constitutionality of 42 U.S.C. §§ 1355 and 1385(a),[25] provisions of the Social Security Act in effect prior to January 1, 1974, the effective date of the Supplemental Security Income Program. The only issue which plaintiffs raise against the federal defendant, then, is the constitutionality of 42 U.S.C. § 1382(e)(1)(A) as it excludes plaintiffs from receiving monthly federal assistance benefits under the Supplemental Security Income Program. Therefore, in order to satisfy the minimal nonwaivable requirement of section 405(g), plaintiffs must allege that they seek review of a decision of the Secretary, final or otherwise, denying,

terminating, or suspending benefits under the Supplemental Security Income Program. *Salfi*, 422 U.S. at 764, 95 S.Ct. 2457.

■ A review of the complaints filed in these cases indicate that very few of the named plaintiffs meet this requirement. The only plaintiffs in *Wilson* who alleged the suspension or termination of public assistance benefits after the effective date of the Supplemental Security Income Program were Maudie Simmons, a recipient of public assistance until her admission to a public mental hospital on February 27, 1974 and John Kiernan Turney, who, according to his affidavit, was a recipient of public assistance until May 1974. As for the plaintiffs in *Sterling*, both May Brimage and William Lewis specifically alleged the termination of Supplemental Security Income payments. Thus, by seeking review of a decision of the Secretary suspending or terminating their public assistance benefits under the Supplemental Security Income Program, plaintiffs Simmons, Turney, Brimage, and Lewis complied with section 405(g)'s nonwaivable jurisdictional requirement. We must now determine whether the Secretary waived any further exhaustion requirement.

The Supreme Court's recent decision in *Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1889 (1976), offers guidance in resolving this question. In that case the Court was confronted with a situation, not unlike the one here, where plaintiffs challenged on constitutional grounds a statutory exclusion from eligibility for welfare benefits (42 U.S.C. § 1395o (2)) before exhausting the full panoply of administrative remedies available to them. Though the Secretary had waived any exhaustion requirement as

---

**24.** In resolving the issue of the district court's jurisdiction under 42 U.S.C. § 405(g), we note that plaintiffs in *Wilson* moved to amend their complaint on September 6, 1974 to specifically allege jurisdiction under 42 U.S.C. § 1383(c)(3) as it incorporates 42 U.S.C. § 405(g) into the Supplemental Security Income Program. The plaintiffs in *Sterling*, on the other hand, never alleged jurisdiction under the Social Security Act. Nevertheless, the complaint may be amended at this late date pursuant to 28 U.S.C.

§ 1653. We decide this without intimating any opinion concerning the sufficiency of the alternative basis for jurisdiction alleged in the complaint. *See Mathews v. Diaz*, 426 U.S. 67, 75 n. 9, 96 S.Ct. 1883, 1889 n. 9, 48 L.Ed.2d 478 (1976).

**25.** The unconstitutionality of these statutory provisions constituted the basis for Count II of the *Wilson* complaint and were alleged in Count II of the *Sterling* complaint.

to two of the named plaintiffs, the Secretary argued that no such waiver was made with respect to a third named plaintiff and that therefore section 405(g) required dismissal of that plaintiff from the lawsuit.

The Supreme Court was unpersuaded by the Secretary's argument. Despite the fact that the third named plaintiff sought judicial review of the statutory exclusion before his application was even denied by the Secretary, the Court held that jurisdiction existed under section 405(g). The Court ruled that the plaintiff had satisfied the nonwaivable prerequisite of section 405(g) jurisdiction by merely filing an application for benefits. With respect to section 405(g)'s exhaustion requirement, the Court held that the conduct of the Secretary in the district court constituted a waiver of any such requirement.

The Supreme Court's analysis in reaching this holding is particularly relevant here. It is significant that the Court ruled that the Secretary waived any objection to the exhaustion of administrative remedies despite the fact that the Secretary had moved to dismiss the complaint in the district court on the very ground that plaintiffs failed to exhaust administrative remedies. In support of its holding the Court stated:

> Although the Secretary moved to dismiss for failure to exhaust administrative remedies, at the hearing on the motion he stipulated that no facts were in dispute, that the case was ripe for disposition by summary judgment, and that the only issue before the District Court was the constitutionality of the statute. As in *Salfi*, this constitutional question is beyond the Secretary's competence. 96 S.Ct. at 1889. [footnotes omitted.]

■ The facts in this case dictate the same result. From the moment these lawsuits commenced, plaintiffs repeatedly alleged in both their pleadings and affidavits that their benefits were terminated solely

because of the operation of an allegedly unconstitutional statute, 42 U.S.C. § 1382(e)(1)(A). Although the federal defendant filed motions to dismiss plaintiffs' complaints for lack of jurisdiction early in this litigation, unlike the case in *Diaz*, these motions contained no claim that plaintiffs' failure to exhaust administrative remedies constituted a basis for dismissal.

More importantly, the federal defendant submitted these cases to the district court for disposition on the merits by summary judgment.[26] By so doing, the federal defendant necessarily contended that there were no material issues of fact in dispute. In Part III of his memorandum supporting his motion for summary judgment in *Wilson*, captioned "Summary Judgment Should Be Entered For Defendants Because The Statutory Classification Is Constitutionally Rational," the federal defendant stated:

> This exclusion [42 U.S.C. § 1383(e)(1)] is the sole statutory basis upon which plaintiffs can conceivably rely in making their constitutional attack. The only issue which can conceivably be raised by the pleadings and other documents is whether the excluded class ("inmates of a public institution") is a constitutionally impermissible classification. That is all that this case is about.

Thus, through his conduct and statements in the district court, the Secretary indicated "that no facts were in dispute, that the case was ripe for disposition by summary judgment, and that the only issue before the District Court was the constitutionality of the statute." *Diaz*, 96 S.Ct. at 1889. Though the Secretary never expressly stipulated that the sole reason plaintiffs' benefits could have been terminated was the operation of 42 U.S.C. § 1382(e)(1)(A), we are convinced from the record that the Secretary entertained no doubt but that plaintiffs' benefits were in fact terminated because of plaintiffs' ineligibility under the

---

**26.** That the federal defendant filed cross motions for summary judgment in the alternative to motions to dismiss for lack of jurisdiction (on grounds other than failure to exhaust administrative remedies) does not alter the fact that the Secretary found it appropriate, in the event these cases were to be decided on the

challenged statute.[27] For these reasons we conclude, as did the Supreme Court in *Salfi* and *Diaz*, that "the Secretary's submission of the question for decision on the merits by the District Court satisfied the statutory requirement of a hearing and final decision." *Diaz*, 96 S.Ct. at 1890.

We reach this conclusion despite the fact that the Secretary, on August 25, 1975, responded to the Supreme Court's decision in *Salfi* by opposing plaintiffs' motion to alter the class and requesting the dissolution of the three-judge court. The basis for the Secretary's response was that plaintiffs and the unnamed members of the class had failed to exhaust administrative remedies before bringing suit in the district court as required by 42 U.S.C. § 405(g) and that, therefore, the court lacked jurisdiction of plaintiffs' claims. In support of his motion the Secretary suggested that exhaustion of administrative remedies could conceivably reveal that factors in addition to the operation of 42 U.S.C. § 1383(e)(1)(A) affected plaintiffs' ineligibility for Supplemental Security Income benefits. In light of *Salfi*, the Secretary urged the court to deny plaintiffs' motion to alter the definition of the class and to dismiss the complaints.

Mindful of *Salfi's* wisdom in imposing a safeguard against judicial review of unnecessary constitutional issues, we recognize the importance of affording the Secretary a full and adequate opportunity to satisfy himself that "the only issue [remaining with respect to the termination of a claimant's benefits] is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine, and that the claim is neither otherwise invalid nor cognizable under a different section of the Act." *Salfi*, 422 U.S. at 765, 95 S.Ct. at

2467. *Salfi* did not, however, intend to permit the Secretary to object to section 405(g)'s exhaustion requirement purely for the purpose of defeating jurisdiction.

It is significant to note that although the Secretary had access to plaintiffs' case files during the pendency of this litigation and yet never contested plaintiffs' claims concerning the sole reason for the termination of their assistance, eighteen months after the litigation had commenced and almost one year after the Secretary had submitted the cases to the district court for disposition by summary judgment, the Secretary argued that exhaustion of administrative remedies could clarify the factual basis of plaintiffs' claims. The Secretary never made any allegation either in the district court or on appeal that any of the plaintiffs' benefits were terminated for reasons other than their ineligibility under 42 U.S.C. § 1382(e)(1)(A). Nor had the Secretary ever contended that there were, in fact, alternative grounds upon which the termination of plaintiffs' benefits could have been based. By submitting these cases to the district court for decision on the merits pursuant to motions for summary judgment, the Secretary waived any objection to exhaustion requirements of section 405(g). *Salfi, supra*; *Diaz, supra*. We see no reason, then, why upon the Supreme Court's decision in *Salfi*, the Secretary should be permitted to defeat jurisdiction by posing hypothetical alternatives to facts already established. The record before us demonstrates that plaintiffs satisfied the finality requirements of section 405(g).

Whether the district court possessed jurisdiction of plaintiffs' claims against the Secretary under 42 U.S.C. §§ 405(g) and 1383(c)(3) depends on factors in addition to

---

merits, to submit them to the district court for disposition under Fed.R.Civ.P. 56.

**27.** In both *Wilson* and *Sterling*, the Secretary filed an answer to plaintiffs' complaints prior to filing his motions to dismiss, or in the alternative, cross motions for summary judgment. In his answers, the Secretary claimed to have insufficient information and knowledge to respond to plaintiffs' allegations that they were denied disability assistance solely because of

their status as pretrial detainees or patients in public mental hospitals. Since the Secretary's answers were filed prior to the time plaintiffs Simmons, Turney, Brimage, and Lewis were added as parties to these actions, the record supports our conclusion that the Secretary acquiesced to these plaintiffs' claims concerning the sole reason for the termination of their assistance.

the finality of the Secretary's decision. On appeal the Secretary argues that even if this court finds that plaintiffs seek review of a "final decision of the Secretary made after a hearing," jurisdiction under sections 405(g) and 1383(c)(3) is lacking since the named plaintiffs failed to allege that the present actions were commenced within the statutory time period prescribed by section 405(g).

In *Salfi* the Supreme Court explained:

Section 405(g) specifies the following requirements for judicial review: (1) a final decision of the Secretary made after a hearing; (2) commencement of a civil action within 60 days after the mailing of notice of such decision (or within such further time as the Secretary may show); and (3) filing of the action in an appropriate district court, in general that of the plaintiff's residence or principal place of business. The second and third of these requirements specify, respectively, a statute of limitations and appropriate venue. As such, they are waivable by the parties, and not having been timely raised below, see Fed.Rules Civ.Proc. 8(c), 12(h)(1), need not be considered here. 422 U.S. at 763–64, 95 S.Ct. at 2466.

Based on the record before us we conclude, as did the Supreme Court in *Salfi*, that the Secretary waived any objection to the statute of limitations set forth in section 405(g).

■ As noted above, plaintiffs in *Wilson* specifically alleged jurisdiction under 42 U.S.C. § 405(g) on September 6, 1974 in their reply memorandum to the Secretary's cross motion for summary judgment and motion to dismiss. Although plaintiffs in *Sterling* never specifically alleged jurisdiction under this statute, the Secretary squarely addressed the issue of jurisdiction under 42 U.S.C. § 405(g) in the district court after the Supreme Court rendered its opinion in *Salfi*. In his memorandum of August 25, 1975 requesting the dissolution of the three-judge court and dismissal of the three consolidated cases, the Secretary took the opportunity to specifically consider plaintiffs' compliance with the jurisdictional requirements of section 405(g) which, he argued, was the exclusive jurisdictional basis upon which the district court could review the Secretary's termination of plaintiffs' Supplemental Security Income benefits. Contending that both the named plaintiffs and unnamed members of plaintiffs' classes failed to comply with many of the jurisdictional prerequisites embodied in section 405(g), the Secretary argued that *Salfi* required dismissal of plaintiffs' claims against him. Nowhere, however, in his comprehensive discussion of section 405(g)'s jurisdictional requirements did the Secretary ever object to plaintiffs' compliance with the statutory time provision for filing suits. Having failed to raise such objection in the district court, the Secretary waived any objection to the Social Security Act's statute of limitations.[28]

■ Having determined that plaintiffs Simmons, Turney, Brimage, and Lewis satisfied section 405(g)'s nonwaivable jurisdictional prerequisite by seeking review of a decision of the Secretary suspending or terminating their Supplemental Security Income benefits, and having concluded from the record in these cases that the Secretary waived both the exhaustion requirement

---

28. Had the Secretary never addressed the issue of plaintiffs' compliance with section 405(g)'s jurisdictional requirements in the district court, our holding with respect to plaintiffs Simmons and Turney would remain the same since they had specifically alleged jurisdiction under the Social Security Act and the Secretary never objected to the timeliness of their complaints. With respect to plaintiffs Brimage and Lewis in *Sterling*, we would require that they be allowed to amend their pleadings to specifically allege the exact date of the mailing of the Secretary's notice informing them of the termination of their Supplemental Security Income payments.

We note, without condoning what frequently amounted to meager pleadings, at best, on the part of all plaintiffs, that the amended complaint in *Sterling* which was filed on May 2, 1974 alleged that Lewis' benefits were terminated in March 1974 when he was incarcerated in Cook County Jail to await trial. Therefore, unless Lewis was incarcerated on either the first or second day of March and the Secretary mailed a notice of termination of benefits on either of those days, the amended complaint was timely filed. Our holding today, however, enables us to refrain from engaging in such unadvised speculation.

and statute of limitations applicable to these plaintiffs under section 405(g), we hold that the district court erred in dismissing plaintiffs' claims against the Secretary for lack of jurisdiction. In light of this holding, we vacate the decision of the district court denying plaintiff's motions for class certification and denying the *Wilson* plaintiffs' motion to alter the definition of the proposed class. *Cf. Jimenez v. Weinberg*, 523 F.2d 689 (7th Cir. 1975); *see also Norton v. Mathews*, —— U.S. ——, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976) (dissenting opinion). These cases are remanded to the district court for consideration of plaintiffs' claims for class relief and plaintiffs' requests for declaratory judgment. Because plaintiffs no longer request injunctive relief against the Secretary, these actions are remanded to a single-judge district court pursuant to Circuit Rule 18.[29]  *Cf. Merced Rosa v. Herrero*, 423 F.2d 591, 593 (1st Cir. 1970).

### Claims Against the State-Defendant

Plaintiffs request this court to reverse the decision of the three-judge district court upholding the constitutionality of Ill.Rev. Stat., ch. 23, § 3–1.4 (1973) and the regulations promulgated thereunder.[30]  Plaintiffs argue on appeal that this court is vested with jurisdiction to review the order of the three-judge district court since plaintiffs have appealed only from that portion of the order denying declaratory relief against the state defendant.[31]  Having abandoned their claim for injunctive relief against the state defendant, plaintiffs contend that they are not appealing from an order of a three-judge court granting or denying an injunction and, therefore, may not appeal directly to the Supreme Court pursuant to 28 U.S.C. § 1253.[32]  Insofar as they are precluded from seeking direct review in the Supreme Court, plaintiffs claim that jurisdiction of these appeals lies in this court pursuant to

**29.** In both their notice of appeal and briefs filed in this court, plaintiffs in *Wilson* expressed their intent to abandon any claim for injunctive relief against the Secretary. The intent of the plaintiffs in *Sterling* is not so clear. Neither the notice of appeal nor brief filed in this court clearly indicate whether they seek injunctive relief against the Secretary. *See* n. 32, *infra*. We note, however, that in their brief on appeal plaintiffs in *Sterling* suggested that this court reach the merits of their claim against the federal defendant. This suggestion was repeated at oral argument by counsel for Wilson who indicated that by abandoning their request for injunctive relief and thereby obviating the necessity of a three-judge court, plaintiffs removed any jurisdictional obstacle preventing this court from reaching the merits of these cases. Counsel for Sterling neither contradicted nor clarified this position. We conclude, therefore, that since plaintiffs no longer request relief peculiar to a three-judge court, a single-judge district court is the appropriate forum to consider plaintiffs' claims for class relief and declaratory judgment in the first instance. In light of the fact that the three-judge court stated its views on the merits of plaintiffs' claims against the Secretary, these cases shall be reassigned to a judge other than the two district court judges who ruled on these cases pursuant to Circuit Rule 23.

**30.** At the outset, it should be noted that neither the federal nor state defendants argue on appeal that the district court erred in granting plaintiffs' requests to convene a three-judge district court. Our own review of the records

in these cases convinces us that the three-judge court was properly convened. *See Goosby v. Osser*, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); *Moody v. Flowers*, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). It must also be noted that plaintiffs concede that since injunctive relief was prayed for in their complaints, the district court's order dismissing the suits on the merits constituted an order denying injunctive relief appealable to the Supreme Court under 28 U.S.C. § 1253. *See Carter v. Stanton*, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Oldroyd v. Kugler*, 461 F.2d 535 (3d Cir. 1972).

**31.** The notice of appeal filed in *Wilson* was "from the final judgment and decision . . . in all respects excepting the denial of injunctive relief . . . ." Plaintiffs in *Sterling* appealed from the district court's order insofar as it, among other things, "granted defendant Edelman's motion to dismiss plaintiffs' claim for declaratory relief against defendant Edelman."

**32.** 28 U.S.C. § 1253 provides:
   Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges.

the mandatory jurisdictional grant of 28 U.S.C. § 1291.[33]

██ In support of their claim that this court possesses jurisdiction of these appeals, plaintiffs point to two lines of cases recently considered by the federal courts and suggest that the holdings of these cases favorably resolve any doubts concerning this court's power to review the order of the three-judge court sustaining the constitutionality of the Illinois statute. Specifically, plaintiffs point to those cases which hold that the Supreme Court's jurisdiction under 28 U.S.C. § 1253 does not extend to an appeal from a three-judge district court order granting or denying declaratory relief alone. *Gerstein v. Coe*, 417 U.S. 279, 94 S.Ct. 2246, 41 L.Ed.2d 68 (1974); *Gunn v. University Committee*, 399 U.S. 383, 90 S.Ct. 2013, 26 L.Ed.2d 684 (1970); *Mitchell v. Donovan*, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); *Rockefeller v. Catholic Medical Center of Brooklyn & Queens, Inc., Division of St. Mary's Hospital*, 397 U.S. 820, 90 S.Ct. 1517, 25 L.Ed.2d 806 (1970); see also *Roe v. Wade*, 410 U.S. 113, 123, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Thoms v. Heffernan*, 473 F.2d 478 (2d Cir. 1973), *rev'd on other grounds*, 418 U.S. 908, 94 S.Ct. 3199, 41 L.Ed.2d 1154 (1974); and those cases which hold that an appellate court possesses jurisdiction to review the decision of a single judge entered in a case requiring a three-judge court, provided that an appellant limits his appeal to action which a single judge could properly take. *Steffel v. Thompson*, 415 U.S. 452, 457 n. 7, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *see also Stone v. Philbrook*, 528 F.2d 1084 (2d Cir. 1975). Arguing that these cases demonstrate that a court of appeals has jurisdiction to review the merits of a constitutional claim decided by a properly convened three-judge court when only declaratory relief is at issue and that an appellant may, by abandoning a request for injunctive relief on appeal, vest an appellate court with jurisdiction it would

not otherwise have to review the merits of a district court order, plaintiffs contend that this court has no choice but to exercise jurisdiction over the present appeals. Were we to accept plaintiffs' analysis of the above cases without further inquiry, the logic of plaintiffs' argument would be persuasive. However, close examination of the statutes and case law concerning the three-judge federal court review apparatus convinces us that neither Congress nor the judiciary intended for a court of appeals to review the merits of a constitutional claim presented to a properly convened three-judge court and decided by that court in ruling on a request for injunctive relief.

██ The legislative history of this section along with the other statutory provisions pertaining to three-judge district courts, 28 U.S.C. §§ 2281–84 [collectively referred to herein as the three-judge court statutes], indicates that Congress devised the three-judge court statutory scheme in order to protect state and federal legislation from improvident doom, on constitutional grounds, at the hands of a single federal district court judge. *MTM, Inc. v. Baxley*, 420 U.S. 799, 804, 95 S.Ct. 1278, 43 L.Ed.2d 583 (1975); *Gonzalez v. Employees Credit Union*, 419 U.S. 90, 97, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974); *Goldstein v. Cox*, 396 U.S. 471, 476, 90 S.Ct. 671, 24 L.Ed.2d 663 (1970); *Phillips v. United States*, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941). By requiring the convening of a three-judge court to consider an application for an interlocutory or permanent injunction and by providing direct review in the Supreme Court of any three-judge court order granting or denying injunctive relief, Congress attempted to assure increased deference, greater deliberation, and more effective judicial review of those cases where the operation of federal or state-wide legislation was threatened. *Phillips v. United States*, 312 U.S. at 250, 61 S.Ct. 480, *Swift & Co. v.*

---

**33.** 28 U.S.C. § 1291 provides:

The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the

Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

*Wickham*, 382 U.S. 111, 127, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).[34]

Recognizing the congressional intent underlying the three-judge court statute, the Supreme Court has attempted to construe its jurisdiction under section 1253 in a manner consistent with both the congressional policy favoring accelerated review of three-judge court orders granting or denying injunctive relief and the equally significant congressional concern for minimizing the Supreme Court's mandatory docket. *Gonzalez v. Employees Credit Union*, 419 U.S. at 98–99, 95 S.Ct. 289; *MTM, Inc. v. Baxley*, 420 U.S. at 804, 95 S.Ct. 1278. In *Phillips v. United States*, 312 U.S. at 250, 61 S.Ct. at 483, the Court stated:

> [I]nasmuch as this procedure [three-judge court statutes] also brings direct review of a district court to this Court, any loose construction of the requirements . . . would defeat the purposes of Congress, as expressed by the Jurisdictional Act of February 13, 1925, to keep within narrow confines our appellate docket.

Thus, in defining the scope of its jurisdiction under section 1253, the Court has stressed that Congress did not intend the three-judge court statutory scheme as "a measure of broad social policy to be construed with great liberality," but intended it, rather, "as an enactment technical in the strict sense of the term and to be applied as such." *Phillips v. United States*, 312 U.S. at 251, 61 S.Ct. at 483; *Mitchell v. Donovan*, 398 U.S. at 431, 90 S.Ct. 1763.

Based on this commitment to a narrow construction of section 1253, the Supreme Court has held that a three-judge court order granting or denying only a declaratory judgment may not be appealed to the Court under section 1253. Cases cited, p. 1276, *supra*. In *Mitchell v. Donovan*, *supra*, the Court was asked to review a three-judge court order dismissing a complaint challenging the constitutionality of the Federal Communist Control Act. In their complaint, plaintiffs had requested that the statute be declared unconstitutional and that an injunction be entered requiring the defendants to have the names of Communist Party candidates placed on the Minnesota ballot for the 1968 election. A three-judge court was convened and, without deciding the merits of plaintiffs' claims, granted plaintiffs' request for injunctive relief. Defendants did not appeal this order. Following the election, the three-judge district court determined that since the prayer for injunctive relief had been rendered moot by the passing of the 1968 election, there no longer remained a case or controversy. Accordingly, the court dismissed the complaint. Plaintiffs appealed the order to the Supreme Court under 28 U.S.C. § 1253. Noting that the "order appealed from does no more than deny the appellants a declaratory judgment striking down the Communist Control Act," and that section 1253 "by its terms grants . . jurisdiction only of appeals from orders granting or denying injunctions, the Court held that it lacked jurisdiction of the appeal. 398 U.S. at 430, 90 S.Ct. at 1765.

A similar result was reached in *Gunn v. University Committee to End War in Vietnam, supra*. In that case a three-judge district court rendered an opinion stating that plaintiffs were entitled to both declaratory and injunctive relief with respect to an unconstitutional Texas statute. In its order, however, the court stayed its mandate and retained jurisdiction of the case pending the next session of the Texas legislature. Defendants appealed to the Supreme Court under 28 U.S.C. § 1253. The Court dismissed the appeal for lack of jurisdiction on the ground that the order appealed from constituted "neither an injunction, nor an order granting or denying one," as required under section 1253. 399 U.S. at 390, 90 S.Ct. at 2017. Though the Court

---

**34.** The legislative history of 28 U.S.C. § 1253 is summarized in *Goldstein v. Cox*, 396 U.S. at 476–78, 90 S.Ct. 671, 24 L.Ed.2d 663, and *Swift & Co. v. Wickham*, 382 U.S. at 116–19, 86 S.Ct. 258, 15 L.Ed.2d 194. *See also* Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. I, 3–12 (1964); Note, The Three-Judge District Court: Scope and Procedure under Section 2281, 77 Harv.L. Rev. 299, 299–301 (1963).

refrained from deciding whether the district court's opinion even constituted a "'judgment' so as to be appealable to the Court of Appeals," the Court noted that "[e]ven if the opinion and subsequent inaction of the District Court could be considered a denial of an injunction because the injunctive relief demanded was not forthcoming, the appellants could not appeal from an order in their favor." 399 U.S. at 390 n. 5, 90 S.Ct. at 2017 n. 5.

The requirement that a party appealing under section 1253 be adversely affected by a three-judge court order granting or denying an injunction was the basis for the Supreme Court's decision in *Gerstein v. Coe*, 417 U.S. 279, 94 S.Ct. 2246, 44 L.Ed.2d 68 (1974). In that case, the Court dismissed for lack of jurisdiction an appeal by the State of Florida from an order of a three-judge district court declaring a Florida abortion statute unconstitutional but denying plaintiffs' request for injunctive relief. Citing *Mitchell* and *Gunn*, the Court held that jurisdiction under 28 U.S.C. § 1253 required that there be an appeal from an order granting or denying injunctive relief and that since the state could appeal only from the declaratory judgment, a direct appeal lay to the court of appeals. *Accord, McCann v. Babbitz*, 400 U.S. 1, 91 S.Ct. 12, 27 L.Ed.2d 1 (1970); *cf. Roe v. Wade*, 410 U.S. at 123, 93 S.Ct. 705. In the companion case of *Poe v. Gerstein*, 417 U.S. 281, 94 S.Ct. 2247, 41 L.Ed.2d 70 (1974), the Court was asked to review plaintiffs' appeal from that portion of the three-judge court order denying their request for an injunction enjoining Florida officials from enforcing the unconstitutional abortion statute. The district court had declined to issue an injunction against the state on the ground that there was no reason to believe that Florida officials would ignore the declaratory judgment. There being no impediment to the Supreme Court's jurisdiction to review this appeal under section 1253, the Court affirmed the district court order, stating, "whether or not the declaratory judgment

was itself properly issued, a question on which we intimate no opinion, the District Court properly refused to issue the injunction." 417 U.S. at 281, 94 S.Ct. at 2248.

■ To the extent that the above cases demonstrate the Supreme Court's strict adherence to the statutory requirements of 28 U.S.C. § 1253, there can be no question but that appellate courts are frequently required to review the merits of constitutional issues decided by properly convened three-judge courts. Unlike any of the precedents discussed above, however, the cases presently before us do not raise any question as to whether the order of the three-judge court in fact constituted a denial of injunctive relief which rested on the merits of plaintiffs' constitutional claims.[35] Nor do the instant cases raise any question as to whether the three-judge court's order denying injunctive relief constituted an adverse decision from which plaintiffs could have directly appealed to the Supreme Court pursuant to section 1253. Rather, the present appeals raise the question of whether an appellate court has jurisdiction to review a plaintiff's appeal from the denial of declaratory relief by a three-judge court when a resolution of that appeal requires review of the precise issues decided by the three-judge court in denying plaintiff's request for injunctive relief as well. Stated in other words, we must decide whether a plaintiff who receives an adverse decision by a three-judge court upholding the constitutionality of a challenged state statute and denying both declaratory and injunctive relief may, by claiming to appeal only from the denial of declaratory relief, seek review in a court of appeals under 28 U.S.C. § 1291 on the ground that the appeal is not "from an order granting or denying . . . an interlocutory or permanent injunction . . . ." 28 U.S.C. § 1253. Plaintiffs claim that the Supreme Court's decision in *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), resolves this question.

---

**35.** A properly convened three-judge court's order denying a request for injunctive relief is not appealable under section 1253 unless the denial

of injunctive relief rests upon a resolution of the merits of the constitutional claim. *MTM, Inc. v. Baxley, supra.*

In *Steffel*, plaintiff filed a complaint challenging the constitutionality of a Georgia statute and seeking both declaratory and injunctive relief. After a hearing, a single judge district court denied all relief. Plaintiff appealed to the Fifth Circuit only to have the district court's judgment affirmed. The Supreme Court granted certiorari, 410 U.S. 953, 93 S.Ct. 1424, 35 L.Ed.2d 686 (1973), and reversed the judgment of the lower court. The significance of this case as it pertains to jurisdiction under section 1253 is that the Supreme Court noted that "[s]ince the complaint had originally sought to enjoin enforcement of the state statute on grounds of unconstitutionality, a three-judge district court should have been convened. . . . But since petitioner's request for injunctive relief was abandoned on appeal . . . [plaintiff did not abandon his request for injunctive relief until he filed his appellate brief, 415 U.S. at 456 n. 6, 94 S.Ct. 1209] . . . and only a request for declaratory relief remained, the Court of Appeals did not err

in exercising jurisdiction over the appeal." 415 U.S. at 457 n. 7, 94 S.Ct. at 1215.

Based on *Steffel* and subsequent circuit court decisions,[36] plaintiffs claim that the fact that they sought injunctive relief below which was denied by a three-judge court is irrelevant to the question of appellate jurisdiction. Plaintiffs argue that although a complaint may require consideration by a three-judge district court, regardless of the type of district court that actually rules on the case, a court of appeals has jurisdiction to review the merits of the district court's order so long as the issue appealed would not in itself require the convening of a three-judge district court. What escapes plaintiffs' analysis, however, is that unlike the situation in *Steffel*, the order which plaintiffs appeal to this court requires review of the same constitutional claims which constituted the jurisdictional basis of the three-judge district court and which could have been directly appealed to the Supreme Court under section 1253.[37] A comparison of the consequences of the Fifth

**36.** *Stone v. Philbrook*, 528 F.2d 1084 (2d Cir. 1975); *Kantrowitz v. Weinberger*, 388 F.Supp. 1127, 1131 (D.D.C.1974), *aff'd*, 174 U.S.App. D.C. 182, 530 F.2d 1034 (1976); *Oldroyd v. Kugler*, 461 F.2d 535 (3d Cir. 1972).

**37.** For this reason, *Stone v. Philbrook, supra,* and *Kantrowitz v. Weinberger, supra,* do not support plaintiffs' claims of jurisdiction here. In *Stone* a single judge district court entered an order declaring a Vermont welfare statute unconstitutional. After the district court rendered its decision, defendant moved the court to vacate the order for lack of jurisdiction, claiming that the case should properly have been considered by a three-judge district court. The district judge denied defendants' motion and an appeal to the Second Circuit followed.

Despite the fact that the Second Circuit thought the case should have been considered by a three-judge court, the court determined that since the district court's order constituted a declaratory judgment and not an injunction, and since defendant could appeal only from that portion of the order granting plaintiff declaratory relief, jurisdiction of the appeal lay in the court of appeals pursuant to 28 U.S.C. § 1291. *Gunn, supra* ; *Gerstein v. Coe, supra.* Unlike *Stone,* however, the order appealed here was rendered by a three-judge court and constituted the denial of both declaratory and injunctive relief.

In *Kantrowitz, supra,* a three-judge district court upheld the constitutionality of provisions of the Social Security Act which prohibit medicaid payments to persons between the ages of 21 and 65 who are patients in institutions for mental disease. Although the complaint sought both declaratory and injunctive relief, the court declined to consider plaintiffs' request for injunctive relief, stating:

Since there has been no allegation that defendants would refuse to obey a declaratory judgment of this Court, injunctive relief would, in any event, be inappropriate. Therefore, any appeal from this Order will properly lie to the United States Court of Appeals for the District of Columbia Circuit. *See Gerstein v. Coe,* 417 U.S. 279, 94 S.Ct. 2246, 41 L.Ed.2d 68 (1974); *Poe v. Gerstein,* 417 U.S. 281, 94 S.Ct. 2247, 41 L.Ed.2d 70 (1974). 388 F.Supp. at 1131.

Thus, in a literal sense, the court's order in *Kantrowitz* did not constitute an order granting or denying an injunction appealable under section 1253. *Mitchell v. Donovan, supra.* Such is not the case here. Since the three-judge court order dismissing plaintiffs' complaints constituted a denial of both injunctive and declaratory relief, we need not consider the jurisdictional questions raised by *Kantrowitz.*

Circuit's jurisdiction in *Steffel* with our jurisdiction in the present cases demonstrates the need to reject plaintiffs' claim that "[t]he fact that *Steffel* actually involved an appeal from a single judge district court and this appeal is from a three-judge district court is of no consequence."

In order to appreciate the consequences of the Supreme Court's decision in *Steffel*, it is necessary to review the three-judge court review apparatus as it applies to single judge orders. Though 28 U.S.C. § 1253 provides for a direct appeal to the Supreme Court from an order granting or denying an injunction "in any civil action, suit or proceeding required . . . to be heard and determined by a district court of three judges," the Supreme Court has held that jurisdiction under section 1253 extends only to orders actually entered by three-judge courts. *Gonzalez v. Employees Credit Union*, 419 U.S. at 96 n. 14, 95 S.Ct. at 293 n. 14; *Ex parte Metropolitan Water Co.*, 220 U.S. 539, 545, 31 S.Ct. 600, 55 L.Ed. 575 (1911).

■ The decision of a single-judge district court upholding the constitutionality of a state statute and thereby denying a plaintiff's request for both declaratory and injunctive relief may not, therefore, be directly reviewed by the Supreme Court. Any claim of error on the part of a single judge in refusing to convene a three-judge court and in deciding the merits of such an action must be reviewed by a court of appeals where, if appropriate, the single judge's decision may be vacated and the case remanded to a three-judge court. *Idlewild Bon Voyage Liquor Corp. v. Epstein, supra; Schackman v. Arnebergh*, 387 U.S.

427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967); *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Kendrick v. Walder*, 527 F.2d 44 (7th Cir. 1975).

■ If on appeal from a single judge's order entered in a case where a three-judge court was required, a plaintiff abandons the very claims which necessitated three-judge court jurisdiction (28 U.S.C. §§ 2281–84), a court of appeals is left to review the declaratory judgment of a single judge, much the same as would have occurred had the plaintiff abandoned his request for injunctive relief in the district court [38] or never requested injunctive relief in the first place.[39] Viewed in this manner, the Supreme Court's conclusion in *Steffel* that the Fifth Circuit possessed jurisdiction to review the merits of the single judge's declaratory judgment prevented the useless expenditure of judicial resources. Surely it would have been pointless to require the court of appeals to vacate the single judge's order as having been improvidently rendered and remand the case back to the single judge for disposition of the very issue which had just been decided and which had already been appealed.

■ While the Supreme Court's decision in *Steffel* circumvents what would have constituted an exercise in futility, plaintiffs' efforts to appeal the present cases pursuant to 28 U.S.C. § 1291 constitutes an eleventh-hour attempt to circumvent the three-judge court statutory scheme. To sanction this novel manipulation of federal jurisdiction would be to substitute the intent of the litigants for that of the Con-

---

**38.** Courts have held that when a plaintiff abandons a request for injunctive relief prior to trial, thereby eliminating any need for a three-judge court, a single judge may reach the merits of the constitutional claim and the case may be appealed to the appellate court. *See Rosario v. Rockefeller*, 458 F.2d 649, 651–52 n. 2 (2d Cir. 1972), *aff'd*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Maggett v. Norton*, 519 F.2d 599, 603 (2d Cir. 1975); *Finnerty v. Cowen*, 508 F.2d 979, 986 (2d Cir. 1974); *Nieves v. Oswald*, 477 F.2d 1109 (2d Cir. 1973); *Merced Rosa v. Herrero*, 423 F.2d 591, 593 (1st Cir. 1970).

**39.** When a plaintiff challenges the constitutionality of a state statute and seeks only declaratory relief, a three-judge court is not required. The Supreme Court has also held that a three-judge court need not be convened when a single judge is presented with a complaint seeking declaratory and injunctive relief, but the request for injunctive relief neither attends the case as it goes to trial nor is contemplated by the parties or the district court in its decision. *Kennedy v. Mendoza-Martinez*, 372 U.S. at 153, 83 S.Ct. 554.

gress. This is demonstrated by the consequences of appellate court jurisdiction here.

Were we to accede to plaintiffs' claim of jurisdiction under 28 U.S.C. § 1291 on the theory that plaintiffs' appeals from the portion of the three-judge court order denying their request for declaratory relief is not appealable under 28 U.S.C. § 1253, we would invite problems, both awkward and complex, which were never contemplated by the three-judge court statutory scheme. In the first place, it would be necessary to determine what effect must be given to the three-judge court's order denying plaintiffs injunctive relief. Plaintiffs do not dispute that this court lacks jurisdiction to review the order of the three-judge court denying their request for an injunction. Yet, as noted above, since the denial of both declaratory and injunctive relief rest on the three-judge court's holding that the Illinois statute is constitutional, plaintiffs' appeals from the denial of declaratory relief necessitates appellate review of the precise constitutional issues already decided by a properly convened three-judge court in denying the same parties injunctive relief. To the extent that doctrines of res judicata or the law of the case would operate in these circumstances, it is questionable whether this court could independently review the claims raised by plaintiffs on appeal.

Assuming, *arguendo*, that this court accepted jurisdiction of these appeals and determined that it was not bound by the outstanding order of the three-judge court denying plaintiffs injunctive relief on constitutional grounds, an equally disturbing problem arises as to the possibility of a conflict between the decisions of this court and the three-judge district court. Were this court to reverse the order of the three-judge court, the parties would find themselves in the unenviable position of being subjected to two conflicting judgments. On the one hand, the Illinois statute would be declared unconstitutional on its face. On the other hand, the state-defendant would not be enjoined from enforcing the statute since enforcement would not violate any constitutional provision. Not only would such a result unnecessarily burden the three-judge court statutory scheme, but it would also defeat the very policy which underlies the Supreme Court's efforts to narrowly construe 28 U.S.C. § 1253. Since only the Supreme Court could resolve such a conflict, appellate court jurisdiction of the present appeals would increase rather than minimize the Supreme Court's docket. Though, admittedly, review of this court's decision would not be mandatory, there is little likelihood that the Supreme Court would let stand such an aberration of the three-judge court statutory scheme.

The problems in accepting jurisdiction of these appeals are further highlighted by the potential abuse the judiciary would incur if a litigant was permitted to sever review of a three-judge court order according to the type of relief denied without any consideration of the issues presented for review. Although plaintiffs in the present cases have abandoned their request for injunctive relief, contending that they no longer believe an injunction is necessary, were we to exercise jurisdiction over these appeals, there is nothing that would prevent a subsequent litigant from simultaneously appealing that portion of a three-judge court order denying declaratory relief to this court and the portion of the order denying injunctive relief to the Supreme Court under section 1253. Since, in cases such as the present ones, both courts would be reviewing the identical constitutional issues, such a result would defy all notions of judicial economy and render the three-judge court statutory scheme unmanageable.[40]

**40.** In *Roe v. Wade*, 410 U.S. at 123, 93 S.Ct. at 712, the Supreme Court expressed disfavor towards the severance of appeals from three-judge court orders when the issues pertaining to both the injunctive and declaratory aspects of the case are identical. Faced with a section 1253 appeal by plaintiffs from the denial of injunctive relief and the defendants' cross-appeal from a declaratory judgment, the Court held that it possessed jurisdiction to review the entire case, stating, "It would be destructive of time and energy for all concerned were we to rule otherwise." *Id.*

Considering the consequences of appellate court jurisdiction over the present appeals, it is imperative that jurisdiction under section 1253 depend more on the issue requiring judicial resolution than on the mere label applied to an appeal. Since the Supreme Court has repeatedly held that "the opaque terms and prolix syntax" of 28 U.S.C. § 1253 are not capable of literal reading, *Gonzalez v. Employees Credit Union*, 419 U.S. at 96–97, 95 S.Ct. at 294; *MTM, Inc. v. Baxley*, 420 U.S. at 803, 95 S.Ct. 1278, the requirement that a party appeal from "an order granting or denying . . . [an] injunction" must not be construed to permit a plaintiff to sever review of a three-judge court order denying both declaratory and injunctive relief when the court's ruling on the constitutional issues in denying an injunction constitutes the basis for the court's denial of declaratory relief as well.[41]

In concluding that this court lacks jurisdiction to review the three-judge court's order upholding the constitutionality of the Illinois statute and denying plaintiffs' requests for declaratory and injunctive relief, we recognize that our holding does not reflect the narrowest possible construction of section 1253. As indicated above, however, we are convinced that in practice our holding imposes no greater burden on the Supreme Court than would exist if we were to accept jurisdiction of these appeals. Moreover, the interests of sound judicial administration dictate the result reached here. The "opaque terms and prolix syntax" of section 1253 must be read to prevent the three-judge court statutory scheme from being used as a mere jurisdictional ploy. If, in so doing, the historic congressional policy of minimizing the Supreme Court's mandatory docket must give way to an express congressional design, then it is for Congress, not the courts, to evaluate the propriety of such a result.[42]

Accordingly, plaintiffs' appeals from the order of the district court denying the requests for declaratory relief and sustaining the constitutionality of Ill.Rev.Stat., ch. 23, § 3–1.4 (1973), is dismissed for lack of appellate court jurisdiction.

**Reversed in Part, Dismissed in Part.**

41. In light of our holding, there is no merit to plaintiffs' claim that *Oldroyd v. Kugler, supra,* supports jurisdiction of these appeals. In that case a three-judge court found a flag desecration statute "precise, clear and constitutional," so it dismissed the suit and dissolved the three-judge court. In response to a letter from counsel requesting whether or not the order constituted a determination that there was no substantial federal question, the court stated that the complaint did not raise a substantial federal question and also that the statute was "precise, clear and constitutional." The appeal was taken to the Third Circuit.

Noting the incongruence of the three-judge court's statement, the Third Circuit stated, "We construe the inconsistent language as being both a judgment on the merits and also a judgment that plaintiffs' cause was one not meant for a Three-Judge tribunal for the court concluded that no substantial federal question was raised and therefore the Three-Judge Court dissolved itself." [footnote omitted.] 461 F.2d at 539. In light of this interpretation, the court determined that it lacked jurisdiction to review the three-judge court's order deciding the merits of plaintiffs' constitutional claim since that order was appealable to the Supreme Court under 28 U.S.C. § 1253. The Court did, however, conclude that it possessed jurisdiction "to review and to reverse the judgment of the Three-Judge Court that 'there is no substantial federal question' and that the plaintiffs are not entitled to declaratory relief." *Id.* Though plaintiffs argue that *Oldroyd* supports jurisdiction of the present appeals, the Third Circuit was careful to point out that the only issue before it was whether the complaint raised a substantial federal question. *Id.* at 540. Unlike the present appeals, the portion of the three-judge court order reviewed by the Third Circuit in *Oldroyd* did not require review of the precise constitutional issue decided by the district court in denying plaintiffs injunctive relief.

42. This was done when Congress passed Public Law 94–831 abolishing the general requirements of three-judge courts in situations covered by 28 U.S.C. §§ 2281 and 2282. The Act was signed into law on August 12, 1976 after the completion of this opinion. Since section 7 of the Act provides that the repealer will "not apply to any action commenced on or before the date of enactment," the Act does not affect the present appeals.