**LEGION et al., Plaintiffs,**

v.

**RICHARDSON et al., Defendants.**
**No. 72 Civ. 2576.**

United States District Court,
S. D. New York.
Feb. 8, 1973.
As Amended March 16, 1973.

Morton Birnbaum, Brooklyn, N. Y., for plaintiffs.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants Richardson, Smith, Kelly and the United States; Taggart D. Adams, Asst. U. S. Atty., of counsel.

Louis J. Lefkowitz, Atty. Gen. State of New York, for State defendants; Brenda Soloff, Asst. Atty. Gen., of counsel.

Before FEINBERG, Circuit Judge, and GURFEIN and STEWART, District Judges.

## OPINION

STEWART, District Judge:

Plaintiffs have brought this class action allegedly on behalf of 1,000,000 mentally ill Americans confined in public mental institutions. Plaintiffs have been provided with pseudonyms.[1] Their actual identities are unknown to the other parties in this action. The federal defendants include the Secretary of the Department of Health, Education and Welfare, the Regional Commissioner of Health, Education and Welfare and the Regional Commissioner of the United States Social Security Administration. The state defendants include the Governor of New York, the Commissioner of New York State Department of Mental Hygiene, the Director of Brooklyn State Hospital, the Director of Willowbrook State School, and the State of New York.

The Honorable Murray I. Gurfein granted plaintiffs' application for a three-judge court, and the case is now before us on defendants' motion to dismiss the complaint and on plaintiffs' motion for a class action declaration.

The complaint alleges that the members of the class are excluded from the benefits of titles XVIII (Medicare)[2] and XIX (Medicaid)[3] of the Social Security Act of 1935 as amended and asks that these programs be declared unconstitutional and altogether abandoned, or alternatively that plaintiffs' exclusion from Medicare and Medicaid be declared unconstitutional and that they be included in the programs.

Plaintiffs additionally seek to enjoin the state defendants from refusing to apply for these additional federal funds, from refusing to allot these funds solely for the improvement of care and treatment in New York public mental institutions, and from proposing "a decrease in state appropriations from their present inadequate levels".

1. John Legion is a 30 year old mentally ill patient in Brooklyn State Hospital, a New York State mental hospital, located in Brooklyn, New York; Richard Armies is a 71 year old mentally ill patient in Kings Park State Hospital, a New York State mental hospital, located in Kings Park, Suffolk County, New York; and

Lillian Hosts is a 10 year old mentally retarded patient in Willowbrook State School and Hospital, a New York State institution for the mentally retarded, located in Staten Island, New York.

2. 42 U.S.C. § 1395 (1970)

3. 42 U.S.C. § 1396 (1970)

Medicare is a health insurance program which provides payment for medical care to persons over-65 years of age. Part A covers hospital costs and is borne totally by the federal government; Part B, which is not involved in this action, covers doctors' charges and is financed by a supplementary monthly premium paid only by those beneficiaries who desire such coverage. Under Medicare, psychiatric treatment in general hospitals with in-patient psychiatric facilities has no lifetime limitation, whereas treatment in psychiatric hospitals is limited to a lifetime total of 190 days.[4] A psychiatric hospital may be public or private; however, Medicare covers only active psychiatric care and does not pay for custodial care. It is plaintiffs' contention that, since most patients over-65 in public mental hospitals require decent custodial care for their physical illnesses, the Medicare legislation benefits primarily the over-65 patient in a psychiatric ward of a general hospital, rather than the over-65 state hospital patient.

Medicaid, on the other hand, is a federal-state program designed to provide federal sharing of state expenditures made in furnishing medical care to the needy of all ages. Medicaid benefits extend to all persons on federally-assisted cash welfare programs and may be extended by the states to those who are "medically indigent". Each state contributes from 25%–50% of total expenditures, varying with the wealth of the state, and each state may set its own standards as to whom it considers to be medically indigent. Medicaid benefits cover both physical and mental illnesses and provide for care both inside and outside the hospital, nursing home or other medical facility. However, the un-

der-65 patient in an institution for tuberculosis or mental diseases is excluded by the statute from Medicaid coverage.[5] Plaintiffs contend that since there is no limit on any service for any physical or mental illness received in a general hospital, almost all community mental health centers with in-patient psychiatric facilities and private psychiatric hospitals have affiliated themselves with general hospitals. The result is that only the state mental institution is made ineligible for Medicaid benefits by this exclusion.

It is the thrust of plaintiffs' contention that the restrictions contained in both the Medicare and Medicaid legislation result in arbitrary and invidious discrimination against public mental institution patients. These patients represent the poorer and sicker of America's hospitalized mentally ill, and because of the alleged discrimination they continue to receive inadequate care in that the state mental institutions receive no federal funds to supplement inadequate state appropriations.

■ While plaintiffs have brought to the court's attention a series of recent decisions that have recognized a constitutional responsibility on the part of the state to provide adequate care and treatment for involuntarily committed mental patients, see Wyatt v. Stickney, 325 F. Supp. 781 (M.D.Ala.1971); Wyatt v. Stickney, 334 F.Supp. 1341 (M.D.Ala. 1971); Wyatt v. Stickney, 344 F.Supp. 373 (M.D.Ala.1972), the issue before this Court is not whether plaintiffs have a constitutional right to adequate treatment. The sole issue before us now is whether the Medicare and Medicaid amendments to the Social Security Act of 1935, by reason of the exclusions and

---

4. 42 U.S.C. § 1395d (1970) provides:
   "(b) Payment under [Medicare] for services furnished an individual during a spell of illness may not . . . be made for—
   (3) inpatient psychiatric hospital services furnished to him after such services have been furnished to him for a total of 190 days during his lifetime."

5. 42 U.S.C. § 1396d (1970) provides:
   "(a) The term 'medical assistance' means payment of part or all of the cost of the following care and services . . . of
   (15) . . . (E)xcept that such term does not include—
   (B) any such payment with respect to care or services for any individual who has not attained 65 years of age and who is a patient in an institution for tuberculosis or mental diseases."

restrictions contained therein, violate the due process or equal protection provisions of the Constitution. We hold that the challenged legislation is constitutionally valid, and we dismiss the complaint on the merits.

In holding as we do, we are not unsympathetic to plaintiffs' allegations that the mentally ill have not received adequate care, nor are we blind to the deplorable conditions that characterize America's public mental institutions—America's Willowbrooks. But confronted with a naked constitutional issue we are unable to afford plaintiffs the only remedy available—a declaration that the challenged legislation is unconstitutional.

■ We turn first to the equal protection claim. As pointed out by the federal defendants in their memorandum, Medicare and Medicaid are complex statutes designed to alleviate the cost of health care which is active and remedial rather than custodial in nature. When Congress enacted these programs in 1965 it did so only after lengthy debate and active consideration of possible alternatives. Where a statutory classification is not conceived on peculiarly suspect grounds such as wealth or race, all that is constitutionally required is that the challenged classification or restriction bear a reasonable relationship with the objectives sought to be fulfilled by the legislation. *See, e. g.,* McDonald v. Board of Elections Com'rs of Chicago, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). In the area of economics and social welfare the Supreme Court has established that "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

It is unnecessary to trace the entire legislative history of Medicare and Medicaid to conclude that there exists in this instance a rational justification for the exclusions and restrictions here challenged. At the time of the passage of Medicare and Medicaid, Congress had determined that advances made in treating mental patients were sufficient to indicate that many would soon be treated in facilities where more remedial benefits were available.[6] Paralleling this determination was the belief by Congress that care of the mentally ill in state hospitals was the responsibility of the states.[7] It is not the function of this Court to evaluate congressional judgment. As the Supreme Court has recently advised: "[s]o long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straightjacket." Jefferson v. Hackney, 406 U.S. 535, 546, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285 (1972).

Plaintiffs argue, however, that a result of the congressional plan is to discriminate against blacks and strict judicial scrutiny is, therefore, required. They offer in support of this contention a bare statistical argument included in their brief, but they present no proof of a racially discriminatory motive on the part of Congress and no proof of invidious discrimination. We are sympathetic with Justice Marshall's caveat—that "at some point a showing that state action has a devastating impact on the lives of minority racial groups must be relevant," 406 U.S. at 575, 92 S.Ct. at 1745 (dissenting opinion); nevertheless, the majority opinion in *Hackney, supra* has dictated that "the standard of judicial review is not altered because of appellants' unproved allegations of racial discrimination." 406 U.S. at 547, 92 S.Ct. at 1732. Here, the challenged legislation distinguishes between medically indigent persons who require short-term care and those who require long-term care, and does not on its face discriminate against blacks or poor persons. We cannot, therefore, conclude that a patently invidious discrimination evolves from this classification.

---

6. U.S.Code Cong. & Admin.News, pp. 2084–87 (1965)

7. U.S.Code Cong. and Admin.News, p. 2086 (1965)

The due process claims are less clearly defined by plaintiffs, but it is apparent that they center essentially around the same issues as the equal protection claims. Strict judicial scrutiny of a statute is required only where its provisions abridge a citizen's fundamental rights. See *e. g.*, Romero v. Hodgson, 319 F.Supp. 1201 (N.D.Cal.), aff'd. 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678 (1971); Dandridge v. Williams, *supra*. The allegations made by plaintiffs are insufficient to show that the statutory coverage itself abridges their fundamental constitutional rights.

Having dismissed the complaint on the merits, we feel no need to deal with plaintiffs' request for injunctive relief nor to consider the propriety of a class action suit.

The Court would like to express its appreciation to Mr. Morton Birnbaum, attorney for plaintiffs in this case, for his devoted efforts to attempt to benefit a class of individuals who seem clearly to be in need of assistance.

So ordered.