Sandra **KANTROWITZ,** etc., and American Public Health Association, Inc., Plaintiffs,

v.

Caspar **WEINBERGER,** Defendant.

Civ. A. No. 74-961.

United States District Court, District of Columbia.

Nov. 22, 1974.

Florence Wagman Roisman, Washington, D.C., Jonathan A. Weiss, New York City, for plaintiffs.

Robert M. Werdig, Jr., Asst. U.S. Atty., Washington, D.C., for defendant.

Before TAMM, Circuit Judge, and SMITH and GESELL, District Judges.

## OPINION AND ORDER

GESELL, District Judge:

This is an individual and class action in the nature of mandamus and for declaratory judgment seeking to restrain the Secretary of Health, Education and Welfare from enforcing the provisions of the Social Security Act which, as will be developed later, prohibit federal payment for care or services to persons between the ages of 21 and 65 who are patients in institutions for mental disease.* It is claimed that by reason of this statutory hiatus plaintiff Kantrowitz and others are denied due process and equal protection under the Fifth Amendment to the Constitution.

Kantrowitz, age 34, is a patient in a non-profit institution for mental diseases licensed by the State of Pennsylvania. She requested Medicaid payment to cover cost of her institutional care but has been administratively denied such benefits on the ground that while she is mentally ill, and has been for some time, she is not entitled to Medicaid assistance by reason of her age. As a result of this ruling, Kantrowitz may be required to leave the institution against her will, in spite of her strong need for continued institutional care. Family funds to provide such care are apparently not available.

---

* All persons under 65 years of age who are patients in tubercular institutions are also denied Medicaid benefits. Plaintiffs sought to challenge this provision as well but they lack standing to sue. Kantrowitz herself does not suffer from tuberculosis and does not represent the class. Moreover, there was no proof establishing that anyone suffering from tuberculosis had pursued administrative remedies or met the requisite jurisdictional amount.

At the outset, defendant challenges the jurisdiction of the Court, asserting that the claims of the class are separate and distinct and may not be aggregated and that there has been a failure to establish a jurisdictional amount by the individual named plaintiff. The Court declines to certify the class for the reasons asserted but is satisfied that Kantrowitz has established jurisdiction in the amount of more than $10,000 to afford jurisdiction under 28 U.S.C. § 1331 for her personal claim based on denial of Medicaid assistance. Accordingly, the Court turns to the merits. The issues have been fully briefed and argued on cross-motions for summary judgment and there are no material issues of fact in dispute.

Section 1396d(a)(17)(B) of 42 U.S.C., enacted in 1965 as § 1905(a)(15)(B) of Pub.L. 89–97, 79 Stat. 352, defined "medical assistance" so as to exclude Medicaid payments on behalf of individuals under age 65 who were receiving in-patient care in institutions solely for the treatment of mental disease or tuberculosis. This exclusion based on institutional status and type of disease was challenged on equal protection grounds before the three-judge court in Legion v. Richardson, 354 F.Supp. 456 (S.D. N.Y.), aff'd sub nom. Legion v. Weinberger, 414 U.S. 1058, 94 S.Ct. 564, 38 L.Ed.2d 465 (1973), rehearing denied, 415 U.S. 939, 94 S.Ct. 1459, 39 L.Ed.2d 498 (1974). The court upheld the exclusion as rational on the grounds that Congress had determined that patients in these institutions had historically been the responsibility of the states and should remain so, *see Legion, supra,* 354 F.Supp. at 459; *see also,* U.S.Code Cong. & Admin.News, p. 2086 (1965). Its decision is, of course, binding on us.

■ What was not before the court in *Legion, supra,* and the primary issue tendered in this proceeding is the exclusion of potential recipients on the basis of their age. Section 1396d(a) (16) of 42 U.S.C., added in 1972 by § 299B of Pub.L. 92–603, 86 Stat. 1460, authorized Medicaid payments on behalf of persons under 21 who were financially qualified and were receiving in-patient care in psychiatric hospitals, provided such treatment was certified by a team of physicians as reasonably likely to "improve the condition . . . to the extent that eventually such services will no longer be necessary." 42 U.S.C. § 1396d(h)(1)(B)(ii). Plaintiff argues the effect of this amendment is to make all needy persons eligible for Medicaid assistance for in-patient care in mental institutions unless they are between the ages of 21 and 65, and that such a classification on the basis of age is irrational and denies equal protection. *Cf.* Cleveland Bd. of Education v. LaFleur, 414 U.S. 632, 657, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (Rehnquist, J. dissenting).

The legislative history of the challenged provisions throws light on the congressional purpose and is essential background for the ultimate decision in this case. Pub.L. 92–603 was a major revision of the Social Security Act which received searching attention because, among other things, it initially included the Nixon Administration's Family Assistance Plan. The bill (H.R. 1) as approved in the House did not contain the provisions adding funding for "Medicaid Coverage for Mentally Ill Children." These provisions were added to the bill by the Senate Finance Committee through Amendment No. 549 which was accepted by the full Senate without debate. *See* 118 Cong.Record 32472, 32477 (Sept. 27, 1972). The Senate Finance Committee Report advanced the following significant explanation for the amendment:

> Under present medicaid law, reimbursement for inpatient care of individuals in institutions for mental disease is limited to those otherwise eligible individuals who are 65 years of age or older.

> Matching for outpatient care for mentally ill children, as well as needy adults, is currently available under Title XIX. The committee supports use of these funds where appropriate and believes that outpatient treatment in the patient's own community should

be used wherever possible. However, in some cases, inpatient care in an institution for mental diseases is necessary.

The committee amendment would therefore authorize Federal matching under medicaid for eligible children, age 21 or under, receiving active care and treatment for mental diseases in an accredited medical institution. . .

The committee believes that the nation cannot make a more compassionate or better investment in medicaid than this effort to restore mentally ill children to a point where they may very well be capable of rejoining and contributing to society as active and constructive citizens.

The committee also believes that the potential social and economic benefits of extending medicaid inpatient mental hospital coverage to mentally ill persons between the ages of 21 and 65 deserves to be evaluated and has therefore authorized demonstration projects for this purpose. S.Rep.No. 1230, 92d Cong., 2d Sess. 280–1 (1972).

The legislative history of Pub.L. 92–603 provides only limited explanation of why Congress singled out persons under 21 to receive benefits but continued to exclude those age 22–65 from payments for in-patient care in mental hospitals. In Conference, the House accepted the Senate amendment to provide payments for mentally ill persons under 21, and the requirement, which became part of 42 U.S.C. § 1396d(h)(1)(B), that an independent medical review team must first certify that benefits be used for care that can be expected to lead to improvement and eventual discharge was added. The Conference, without explanation, also struck out the provisions for demonstration projects for those between 21 and 65. H.R.Rep.No.1605, 92d Cong., 2d Sess. 65 (1972) (Conference).

Subsequently, H.E.W. provided estimates that the cost of adding care for mentally ill children would be $40 million in fiscal 1973 and $110 million in fiscal 1974, or $104 million in calendar year 1973 and $120 million in calendar year 1974. · 118 Cong.Record 37354 (Oct. 18, 1972).

With this legislative history in mind, the Court considers the controlling precedents. Legion v. Richardson, *supra*, states the controlling rule of law to be applied under circumstances such as presented here where a public welfare legislative classification is challenged. The Court there commented:

Where a statutory classification is not conceived on peculiarly suspect grounds such as wealth or race, all that is constitutionally required is that the challenged classification or restriction bear a reasonable relationship with the objectives sought to be fulfilled by the legislation. *See, e. g.*, McDonald v. Board of Election Com'rs of Chicago, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). In the area of economics and social welfare the Supreme Court has established that "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). 354 F.Supp. at 459.

Moreover, there is related authority to the effect that equal protection is not denied when a legislature in dealing with a social problem chooses to take "one step at a time," Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955), "so long as the line drawn" between steps is "rationally supportable." Geduldig v. Aiello, 417 U.S. 484, 495, 94 S.Ct. 2485, 2491, 41 L.Ed.2d 256 (1974).

The validity of certain age classifications has been recognized in a closely related context. In Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed. 2d 285 (1972), the Court was faced with a statute which, *inter alia*, preferred the elderly and disabled poor over other welfare recipients by awarding them

100 percent of their budgeted needs while giving only 75 percent of budgeted need to other categories of recipients. The statute was held not to violate the equal protection clause. The Court stated, "the State may have concluded that the aged and infirm are the least able of the categorical grant recipients to bear the hardships of an inadequate standard of living," 406 U.S. at 549, 92 S.Ct. at 1733, and consequently it was permissible to give preference to those groups by meeting their needs first.

■ In selecting persons under age 21 as the next step in its grant of funds for mental illness, Congress drew the traditional line of emancipation from parental control. There is no showing that this age differentiation was, on its face, unreasonable. Congress was obviously concerned with the enormous expense any program to supplement traditional state aid for mental illness involved. It chose to make a compassionate, sound investment to restore mentally ill children amenable to treatment to constructive citizenship. The 1972 provisions affording in-patient service for mental disease to persons under 21, here attacked, should not be viewed as an exclusion of other groups, but rather a rational step toward broadening the class of persons receiving federal benefits. Where the Federal Government acts to assist and supplement traditional state care for those requiring medical assistance who are in impoverished circumstances, it cannot be said that there is, on the face of things, a constitutional infirmity in a decision to move gradually into the area providing institutional support initially for a dependent group. Institutional care is now provided to both extremes of the age spectrum. No differentiation is made on racial or other purely arbitrary grounds. Nor does any constitutional issue arise, as plaintiffs contend, because of the very indirect and speculative effect the program may have upon a person's travel or choice of residence when reaching age 21.

The Court is persuaded that this positive step is wholly consistent with the obvious legislative intent to broaden Medicaid assistance and anticipates that Congress will continue to consider and study approaches designed to improve mental care assistance to others presently not receiving institutional assistance. The rationality test reiterated in *Legion* for public welfare legislation has been satisfied in this instance. The complaint based on denial of equal protection to those seeking Medicaid assistance for institutional care of mental disease between ages 21 and 65 must fail.

Summary judgment is granted for defendant and denied as to plaintiffs on all issues relating to Medicaid benefits for the mentally ill. The claims on behalf of tubercular patients are dismissed for lack of jurisdiction.

■■ Since there has been no allegation that defendants would refuse to obey a declaratory judgment of this Court, injunctive relief would, in any event, be inappropriate. Therefore, any appeal from this Order will properly lie to the United States Court of Appeals for the District of Columbia Circuit. *See* Gerstein v. Coe, 417 U.S. 279, 94 S. Ct. 2246, 41 L.Ed.2d 68 (1974); Poe v. Gerstein, 417 U.S. 281, 94 S.Ct. 2247, 41 L.Ed.2d 70 (1974).

The foregoing shall constitute the Court's findings of fact and conclusions of law.

So ordered.