SYLVESTER MONTOROULA, Individually and as Parent and Natural Guardian of PETER MONTOROULA, a Person Under a Disability, Respondent, v HENRY G. PARRY, JR., as Commissioner of Orange County Department of Social Services, Respondent, and ABE LAVINE, as Commissioner of New York State Department of Social Services, Appellant.

Second Department, November 1, 1976

*Louis J. Lefkowitz, Attorney-General (Harold Henry, Samuel A. Hirshowitz* and *Herbert J. Wallenstein* of counsel), for appellant.

*Raymond H. Bradford (Richard A. Howard* of counsel), for Sylvester Montoroula, respondent.

HOPKINS, Acting P. J. The Special Term has declared the provisions of subdivision 2 of section 365 of the Social Services Law and 18 NYCRR 360.21 (e)* to be unconstitutional as

---

\* Subdivision 2 of section 365 of the Social Services Law reads as follows: "2. Any inconsistent provision of this chapter or other law notwithstanding, the department shall be responsible for furnishing medical assistance to eligible individuals: (a) who are sixty-five years of age or older and who are patients in either state hospitals for the mentally disabled operated by the state department of mental hygiene or state hospitals for the treatment of tuberculosis operated pursuant to the provisions of the public health law; (b) who are under twenty-one years of age and who are receiving psychiatric services in such state hospitals for the mentally disabled which services conform to the state plan implementive of this title and which a team consisting of physicians and other qualified personnel has determined are necessary on an inpatient basis and can reasonably be expected to improve the condition requiring such services to the extent that eventually such services will no longer be necessary; in the case of a person who, during the course of hospitalization attains the age of twenty-one, such services may continue until he reaches the age of twenty-two; (c) who are patients in that part of a public institution operated for the care of the mentally retarded that has been approved pursuant to law as a hospital or nursing home; (d) who are under care and treatment for drug dependence in a facility, or part thereof, operated pursuant to the provisions of article eighty-one of the mental hygiene law if and so long as federal aid is available therefor; (e) who are under care in a hospital while they are on release from an institution in the state department of mental hygiene or who are certified drug dependent persons under care in a hospital while they are on release from a drug abuse treatment facility or part thereof operated in

violative of the equal protection of the laws, as applied to the petitioner's son.

The appeal comes to us under a stipulation of facts, stating that the petitioner is the father of Peter Montoroula, who is 24 years old and suffers from "severe mental and psychiatric problems, although he has never been declared judicially incompetent". As a result of his disability, Peter requires "institutionalization", and the petitioner applied for medical assistance under the Social Services Law in placing his son in a private institution. The application was denied by the respondent Parry (the Commissioner of the Orange County Department of Social Services); that determination was confirmed after a fair hearing by the appellant Lavine (then Commissioner of the New York State Department of Social Services). This article 78 proceeding to review the determination of the State commissioner followed.

The petitioner contends that his adult child has been deprived of the equal protection of the laws because the statute and the regulation unlawfully discriminate in their classifications, based upon age and the kind of illness described. The Special Term found that an unlawful discrimination did indeed exist and declared the statute and regulation unconstitutional in those respects. We are constrained to reverse. Neither the statute nor the regulation violates the requirements of the equal protection of the laws.

Section 365 of the Social Services Law is contained within title 11 thereof, designed to put into effect the Federal Medi-

compliance with applicable provisions of law and supervised or operated by the state office of drug abuse services, for the purpose of receiving care in such hospital. The department may at its option discharge such responsibility, in whole or in part, through social services districts designated to act as agents of the department. While so designated, a social services district shall act as agent of the department and shall be entitled to reimbursement as provided in section three hundred sixty-eight-a of this title."

18 NYCRR 360.21 (e) reads as follows:

"(e) Medical assistance shall be provided to eligible individuals under 21 years of age, or age 65 and over, who are receiving in-patient psychiatric services in an institution operated primarily for the care of the mentally disabled when:

"(1) such services conform to Federal and State standards; and

"(2) when a team, consisting of physicians and other qualified personnel, has determined that such services are necessary on an in-patient basis and can reasonably be expected to improve the condition requiring such services to the extent that eventually they will no longer be necessary.

"In the case of an individual who, during the course of hospitalization, attains the age of 21, such services may continue until he reaches the age of 22."

caid program (L 1966, ch 256; McKinney's Sess Laws of 1966, p 2873 [Memorandum of Social Welfare Department]). Thus, title 11 reflects the Federal scheme, no doubt with the objective of obtaining reimbursement from Federal funds (cf. Social Services Law, §§ 363-a, 363-b, 368-a). That concern for reimbursement, and the frank desire of the State to adopt the Federal pattern establishing eligibility for medical assistance, do not, of course, insulate the statute and regulation from the charge of a violation of equal protection by reason of an invidious discrimination (see *Shapiro v Thompson,* 394 US 618, 641).

The petitioner's grievance against the State's plan for medical assistance, embodied in the statute and regulation, rests upon two propositions: (1) that the plan, though allowing assistance to persons under 21 years old and over 65 years old, provides none to persons not falling within those age groups; and (2) that the plan, though allowing assistance to persons suffering from a physical disability as in-patients, regardless of age, provides none to persons suffering from a mental disability after they have become 21 years old.

The Attorney-General points out that the State plan provides hospital services in State institutions for persons suffering from a mental disability without any limitation based upon age. He admits that the State plan does not provide in-patient services in private hospitals for persons suffering from a mental disability who are over 21 years old and under 65 years old.

The question whether a State statute or practice abridges the guarantee of the equal protection of the laws must first be subjected to a preliminary test to ascertain the nature of the classification said to be offensive. If the classification touches the "suspect" attributes of race, national origin or religion, or rights of fundamental importance, then the State must demonstrate that a compelling governmental interest is served by the classification *(Shapiro v Thompson,* 394 US 618, 634, *supra; San Antonio School Dist. v Rodriguez,* 411 US 1, 33-34; *Massachusetts Bd. of Retirement v Murgia,* 427 US 307). If, on the other hand, the classification is not founded upon a "suspect" qualification, then its validity must be judged by the less stringent test of whether it has a rational basis (see *Montgomery v Daniels,* 38 NY2d 41, 59-60).

Legislation involving the general area of public assistance

has not so far been said to touch a "suspect" classification (*Dandridge v Williams,* 397 US 471, 485-487; *Rosado v Wyman,* 397 US 397, 412; *Jefferson v Hackney,* 406 US 535, 546-551; cf. *Mathews v Lucas,* 427 US 495). We must, therefore, apply the standard of a rational basis to determine whether the statute and regulation offend the equal protection of the laws. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it" (*McGowan v Maryland,* 366 US 420, 426).

We are left in this case without a definitive legislative expression of the grounds underlying the statutory formula. The Attorney-General refers us to a report of the Senate Finance Committee (S Rep No. 1230, 92d Cong, 2d Sess, 280-281 [1972]) in support of the Federal legislation authorizing the program (US Code, tit 42, § 1396a), which indicates that Congress intended to benefit the mentally ill under 21 and over 65, and to await the evaluation of demonstration projects before extending the benefits to those so afflicted between 21 and 65. However, the Senate Committee Report was not adopted in its entirety by the Conference of the Senate and House of Representatives (H R Rep No. 1605, 92d Cong, 2d Sess, 65 [1972] [Conference]). Thus, we are compelled to exercise our own judgment to reconstruct a state of facts which reasonably upholds the legislative determination of need and benefit.

The elderly and the young have been traditional subjects of the community's solicitude (cf. Social Services Law, § 2, subds 26, 27, 30; §§ 250; 410-d). Over the years that traditional concern has been manifested in various forms of relief, enlarging and contracting as social consciousness of the needs of these two groups in our community has deepened and budgetary and economic resources have become available. To define the age qualification embracing the age groups is necessarily a matter in the first instance for the Legislature. A limit may appear arbitrary in one perspective and entirely proper in another.

Temporal differentials abound in the law and over the years have been conventional legislative methods to mark the area of statutory application. Outside the area the legislative prescription may appear to possess equal validity, but it is unanswerable that all time distinctions must have a start and a stop, and in the end it is the legislative judgment which

must be afforded the preference under our system of government.

Similarly, the Legislature may decide that one type of disability should receive special assistance as against another, i.e., physical disability as opposed to mental disability. Moreover, the Legislature may, within the type of disability itself, choose to confer benefits within specific limits, i.e., grant benefits to persons in public institutions and withhold benefits from persons in private institutions. These distinctions may be justified because the program is considered to be experimental, or because of budgetary restrictions. The freedoms protected by the Bill of Rights and the Fourteenth Amendment are not impermissibly affected by a regulation which reasonably adjusts public assistance. "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect" *(Dandridge v Williams,* 397 US 471, 485, *supra).*

These decisions, which are within the legislative power, are recognized by recent judicial authority not to infringe the equal protection of the laws (see *Matter of Levy,* 38 NY2d 653, 659; *Matter of Claire,* 44 AD2d 407, mot for lv to app dsmd 35 NY2d 706; *Legion v Richardson,* 354 F Supp 456, affd *sub nom Legion v Weinberger* 414 US 1058; *Kantrowitz v Weinberger,* 388 F Supp 1127). We should not fault a program of public assistance because the legislative choice favors the more vulnerable of our population or declines to treat all afflictions equally. The State "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind", selecting "one phase of one field and apply a remedy there, neglecting the others" *(Williamson v Lee Optical Co.,* 348 US 483, 489).

The scope of legislative power was treated perceptively in the recent decision of the Court of Appeals in *Matter of Levy (supra).* In that case, the claim was made that the statute providing assistance to blind and deaf children without parental contribution discriminated unfairly against the parents of other handicapped children who were required to furnish contribution. Rejecting the claim of unconstitutionality, the court (per JONES, J.), said (p 660): "Obviously choices must and will be made; priorities must and will be set. This is the essence of the legislative process. Were the financial resources available to State government unlimited, this would not be necessary and might not be desirable. It would be unthinka-

ble, however, to suggest that confronted with economic strictures State government is powerless to move forward in the fields of education and social welfare with anything less than totally comprehensive programs. Such a contention would suggest that the only alternative open to the Legislature in the exercise of its policy-making responsibility, if it were to conclude that wholly free education could not be provided for all handicapped children, would be to withdraw the benefits now conferred on blind and deaf children—thus to fall back to an undifferentiated and senseless but categorically neat policy that since all could not be benefited, none would be."

From the perspective of the petitioner, the legislative choice may well seem capricious, unjustified by any rational process applied to his son. Ours must be of a broader view, taking into account the provisions of the Federal program, the circumstances surrounding the status of the young and elderly in the community, and the nature of the treatment which a mental illness involves. In this perspective we do not find that the equal protection clause has been violated or that the classification is invidious in its application.

Accordingly, the judgment should be reversed and the proceeding dismissed on the merits.

MARTUSCELLO, COHALAN, DAMIANI and SHAPIRO, JJ., concur.

Judgment of the Supreme Court, Orange County, dated October 8, 1975, reversed, on the law, without costs or disbursements, and proceeding dismissed on the merits. No findings of fact were presented for review.

Permission for the taking of the appeal is hereby granted by Mr. Justice HOPKINS.