478 F.Supp. 1046 (1979)
Thomas STERLING et al., Individually and on behalf of all others similarly situated, Plaintiffs,
v.
Patricia R. HARRIS, Secretary of the Department of Health, Education and Welfare, Defendant.
Charles Edward WILSON et al., Individually and on behalf of all others similarly situated, Plaintiffs,
v.
Patricia R. HARRIS, Secretary of the Department of Health, Education and Welfare, Defendant.
Nos. 73 C 2337, 73 C 3070.
United States District Court, N. D. Illinois, E. D.
October 5, 1979.
*1047 *1048 Thomas Grippando, James D. Weill, Legal Asst. Foundation, Chicago, Ill., for plaintiffs.
James R. Thompson, U. S. Atty., William J. Scott, Atty. Gen., c/o George L. Grumley, Chicago, Ill., for defendant Patricia R. Harris, Sec. of HEW.

ORDER
BUA, District Judge.
These consolidated cases are here on remand from the Seventh Circuit Court of Appeals, where the plaintiffs successfully challenged a district court's dismissal of their complaint for lack of jurisdiction. Wilson v. Edelman, 542 F.2d 1260 (7th Cir. 1976). As noted by the court of appeals, jurisdiction over this matter arises under 42 U.S.C. § 1383(c)(3). 542 F.2d at 1269. Before the court are the parties' cross-motions for summary judgment.
The plaintiffs challenge the constitutionality of 42 U.S.C. § 1382(e)(1)(A)-(B).[1] These subsections, when read together, serve to exclude certain plaintiffs, who are aged, blind, and/or disabled individuals, from benefits received by other such individuals under the federally funded Supplemental Security Income Program (SSI), 42 U.S.C. § 1381 et seq. The plaintiffs claim that this exclusion constitutes a violation of their rights to equal protection under the Fourteenth Amendment.
The facts of the two cases are undisputed. Plaintiffs represent two classes of individuals: residents of public mental health institutions between the ages of twenty-one and sixty-five (the Wilson plaintiffs) (No. 73 C 3070), and pretrial detainees (the Sterling plaintiffs) (No. 73 C 2337). The exclusion of these two groups from receipt of benefits is not directly stated in the statute. Instead, it arises from a series of related provisions.

I. THE PUBLIC MENTAL HEALTH INSTITUTION EXCLUSION
The statute provides initially that all aged, blind, or disabled individuals who are found to be eligible under the Act are entitled to receipt of SSI benefits paid by the Secretary of Health, Education and Welfare. 42 U.S.C. § 1381a.[2] The exclusion at *1049 issue in the present case arises from two modifying provisions. The first of these provisions provides that inmates of public institutions are not eligible for SSI benefits. 42 U.S.C. § 1382(e)(1)(A). This general exclusion is then altered, however, by 42 U.S.C. § 1382(e)(1)(B), which provides a maximum $25 per month stipend to inmates of institutions that are eligible to receive payments on behalf of individuals under the Medical Assistance title (Medicaid).
The exclusion of the Wilson plaintiffs from the $25 per month living stipend results from this use of the Medicaid subchapter in determining eligibility for the SSI benefits. The Medicaid statute, 42 U.S.C. § 1396 et seq., while providing for payments to most public and private medical facilities, 42 U.S.C. § 1396d(a)(1)-(17), excludes from its coverage payments on behalf of an individual who is between the ages of twenty-one and sixty-five and who is a patient in a public institution for mental illness. 42 U.S.C. § 1396d(a)(16), (17)(A)-(B). Thus, the Wilson plaintiffs note that while needy aged, blind and disabled persons in institutions are ordinarily eligible to receive the $25 a month SSI benefit, their class has been excluded because the Medicaid eligibility scheme has been pyramided into the SSI statute. This exclusion is said to violate the equal protection clause.

A. The Appropriate Level of Review: The Three-Tier Approach

The Supreme Court has used a three-tier analysis in scrutinizing legislation that has created a classification that has served to exclude a certain group from its benefits. See L. Tribe, American Constitutional Law 1082 (1978). The usual form of review, the "rational relationship test" or "minimal scrutiny" analysis, requires only that the statute bear some rational or reasonable relation to a legitimate state interest. See, e. g., Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). If this test is employed, the defendant must show merely that "the distinctions that are drawn have `some relevance to the purpose for which the classification is made'." Rinaldi v. Yeager, 384 U.S. 305, 309, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966).
The second level of review frequently employed by the Court is the "strict scrutiny" test. If a suspect class, Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race); Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948) (national origin), or a fundamental interest, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (interstate travel); Harper v. Virginia Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (voting) is involved, the Court will require that a challenged statute be a necessary means of furthering a compelling state interest if it is to withstand an equal protection challenge. See San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 16, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
A third level of scrutiny, that of a heightened or intermediate judicial review has recently evolved. See Gunther, The Supreme Court, 1971 TermForward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1 (1972). This tier has been employed by the Court in scrutinizing legislation that serves to discriminate against groups that possess certain characteristics in common with the suspect groups. See L. Tribe, American Constitutional Law 1090. While the Court has been hesitant to recognize new suspect classifications, it has recognized instead certain "quasi-suspect" groups that will receive an intermediate level of judicial review. Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) (illegitimacy); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (sex). Under this level of scrutiny a classification "must serve important governmental objectives and must be substantially related to achievement of those objectives." Califano v. Webster, 430 U.S. 313, 316-17, 97 S.Ct. 1192, 1194, 51 L.Ed.2d 360 (1977). See Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).
*1050 Accordingly, the equal protection analysis here must begin with an analysis of the classification created by the statute and a determination of whether that classification discriminates on the basis of either suspect or quasi-suspect criteria.[3] As recently noted by the Supreme Court, "proper classification for purposes of equal protection analysis is not an exact science, but scouting must begin with the statutory classification itself." Califano v. Boles, ___ U.S. ___, ___, 99 S.Ct. 2767, 2775, 61 L.Ed.2d 541 (1979).

B. The Statutory Classifications

The statute at issue in the present case creates three classifications: (1) age, and (2) residence in a public, (3) mental health hospital.

1. Age

Age classifications have not been recognized as suspect for purposes of equal protection analysis. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); Trafelet v. Thompson, 594 F.2d 623 (7th Cir.) cert. docketed 48 U.S.L.W. 3001 (June 25, 1979). Thus, if, as the defendant claims, the classification in the present case is based on age alone, lower-tier scrutiny would apply, and the defendant would have to show merely a rational relationship between the classification and a legitimate state interest. See Murgia, supra.
There is certainly an age classification present here, for only those inmates of public mental health institutions who are between the ages of twenty-one and sixty-five are excluded from receipt of the SSI benefits. Age, however, is not the sole operative factor in this classification. Blind and disabled persons between the ages of twenty-one and sixty-five who do not reside in public mental hospitals are eligible to receive benefits under the statute. Thus, the statute discriminates on the basis of residence in a public mental health institution as well as age, and this court's analysis must continue on the basis of impact upon people residing in such institutions.

2. Residence in a public institution

The statute's distinction between residents of public and private institutions withstands equal protection scrutiny. Residence in a public institution has never been recognized as a classification that compels a heightened level of equal protection scrutiny, nor can this court discern any commonalities between this classification and those that have received such treatment. Thus, lower-tier "rational relation" scrutiny must be applied.
Since a classification that furthers any legitimate state purpose can survive lower-tier analysis, the public/private classification, by itself, must be upheld. The purpose for classifying according to public and private institutions is apparent in the statutory scheme. Congress recognized that most subsistence needs of public institution inmates were being met, and they were not in need of equal treatment under the full SSI benefits. 1972 U.S.Code Cong. and Admin. News. p. 4989 at 5136. Congress could well conclude that public institution inmates are receiving all of the funds from the public treasury to which they are entitled. See Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

3. Mental illness

If the statute classified only according to age and residence in a public institution, it would merely have to pass minimal judicial scrutiny. The statute, however, also classifies according to mental health, for residents of public general health hospitals are eligible for the benefits while certain residents of public mental health hospitals are not. Thus, it is necessary to determine the appropriate level of review to be employed in reviewing a mental health classification.

C. Mental Health Classifications Deserve Quasi-Suspect Status

The Wilson plaintiffs assert that while mental illness is not likely to be considered a suspect classification (e. g. based on race, alienage, or national origin), the classification *1051 should be subject to the intermediate level of scrutiny that has been recognized for "quasi-suspect" groups (e. g. women and illegitimate children) having certain characteristics of the suspect classes. In the alternative, the plaintiffs urge that the exclusion at issue in the present case wholly fails to meet even minimal standards of rationality. Defendants claim that the heightened level of judicial scrutiny would be inappropriate for a mental health classification, and they assert that the classification survives minimal scrutiny, for it is reasonably related to a legitimate state interest.
No Supreme Court[4] or court of appeals case characterizing mental illness for purposes of equal protection analysis has been called to the attention of this court. Without the benefit of such direction, it is necessary for this court first to discern the common indicia of the groups that have been distinguished as being suspect or quasi-suspect classification, and then to determine whether a mental health classification is analagous. This is not easily accomplished, for several different indicia have been enunciated by the Supreme Court in its cases, and additional factors have been identified by commentators.

1. The indicia of suspect classes

In Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), the Supreme Court depicted two related indicia of the suspect classifications. In addressing a claim of gender-based discrimination, the Court first noted that "sex, like race and national origin, is an immutable characteristic determined solely by the accident of birth." Id. at 686, 93 S.Ct. at 1770. See Korematsu v. United States, 323 U.S. 214, 243, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (Jackson, J., dissenting). The Court followed this description by noting a second suspect trait that the characteristic "frequently bears no relation to ability to perform or contribute to society." 411 U.S. 677 at 686, 93 S.Ct. at 1770.
The suspect indicia have received further delineation in other Supreme Court cases. In Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), the Court indicated that suspect classifications are those that discriminate against discrete and insular minorities that are unable to express a potent voice in the political process. See United States v. Carolene Products Co., 304 U.S. 144, 152-53 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). A further depiction arose in San Antonio School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973), where the Court recognized the need to provide heightened scrutiny in favor of groups that "[are] saddled with such disabilities or subject to such a history of purposeful unequal treatment . . . as to command extraordinary protection . . .." This characteristic has also been referred to as a "stigma of inferiority and badge of opprobrium" common to the suspect groups. Developments in the LawEqual Protection, 82 Harv.L.Rev. 1065, 1127 (1969).

2. Mental health classifications involve the most significant suspect indica

In applying these indicia to the mental health classification created by the present statute, the court finds that only one of the indicia used to define suspect classes is absent in this case. A mental health problem sufficient to cause institutionalization will necessarily "bear [a] relation *1052 to ability to perform or contribute to society." Frontiero v. Richardson, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973). The existence of disadvantages based on that criteria are therefore understandable.
Aside from this characteristic, it appears that mental health classifications possess the significant indicia of the suspect classifications recognized in other cases. The mentally ill are a politically impotent, insular minority. Inmates in a public mental health institution enjoy limited rights of association and necessarily have difficulty combining with other groups in our society to further their interests. See United States v. Carolene Products Co., 304 U.S. 144, 152-53, n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938).
Indeed, such insularity has been recognized as the most significant indicium of the suspect classifications. See L. Tribe, American Constitutional Law 1003, 1077 (1978). See also Ely, Toward a Representation Reinforcing Mode of Judicial Review, 37 Md.L.Rev. 451 (1978).
Further, the mentally ill have been subject to a "history of unequal protection." San Antonio School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Indeed, the present legislative classification, by denying inmates of public health institutions the funds necessary to purchase personal, non-institutional items, serves to perpetuate "a feeling of inferiority as to their status in the community . . [and its] impact is greater when it has the sanction of law." Brown v. Board of Education, 347 U.S. 483, 494, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954). This factor has also been considered as perhaps the most important factor in determining new suspect categories. See Developments in the Law Equal Protection, 82 Harv.L.Rev. 1065, 1127 (1969).
It is debatable whether and to what extent the mental illness is "an immutable characteristic determined solely by the accident of birth." Frontiero v. Richardson, 411 U.S. 667, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973). It would seem that the policy behind this indiciumto extend extra protection to persons that have been identified by a factor over which they have no controlis satisfied in the case of the mentally ill.

3. Prior district court decisions

Several district courts have applied these indicia in classifying mental illness for purposes of equal protection analysis. Two district courts have refused to apply strict scrutiny. In New York State Assoc. for Retarded Children v. Rockefeller, 357 F.Supp. 752, 762 (E.D.N.Y.1973), the court held that the plaintiff class, residents of a New York institution for the mentally retarded, had not been discriminated against on the basis of suspect criteria. The court there, however, only considered the traditional two-tier test and did not consider the possibility that mental health classifications fall under the middle-tier test which has since become more clearly established.
In a second case, Doe v. Colautti, 454 F.Supp. 621 (E.D.Pa.1978), the Frontiero indicia were cited by the court in its refusal to apply strict scrutiny to legislation imposing a 60-day limitation on benefits for psychiatric care. The court noted, however, that middle-tier scrutiny may have been appropriate for reviewing the statute, but such a determination was unnecessary since the statutory scheme would have survived scrutiny under this heightened standard of review. Id. at 632.
Two district courts have found middle-tier scrutiny appropriate for reviewing legislation that classifies according to various types of mental disabilities. In Frederick v. Thomas, 408 F.Supp. 832, 836 (E.D.Pa.1976), the court noted that while learning disabled children were not members of a suspect class, their minority status and political powerlessness supported an application of the "middle test" of equal protection. Similarly, in Fialkowski v. Shapp, 405 F.Supp. 946, 958-59 (E.D.Pa.1975) the court recognized the need to apply "greater judicial scrutiny" to the claims of the mentally retarded. To support its use of this heightened review, the court cited San Antonio Independent School Dist. v. Rodriguez, 411 *1053 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) for the proposition that political powerlessness and purposeful unequal treatment are shared by the suspect classes. 405 F.Supp. at 958-59.
In addition to these two district court holdings, various commentators have recognized a need for applying an intermediate level of scrutiny to statutes that classify mental health. See Burgdorf & Burgdorf, A History of Unequal Treatment: The Qualifications of Handicapped Persons as a "Suspect Class" Under the Equal Protection Clause, 15 Santa Clara Law. 855, 902-08 (1975); Note, Mental Illness: A Suspect Classification, 83 Yale L.J. 1237 (1974); Comment, Wyatt v. Stickney and the Rights of Civilly Committed Mental Patients to Adequate Treatment, 86 Harv.L. Rev. 1282, 1294 & n. 62 (1973).
The court concludes that the common indicia that mental health shares with the suspect classifications are of sufficient importance to require the present statutory classification to pass an intermediate level of judicial scrutiny.

C. The Asserted Legislative Purposes are Insufficient to Uphold the Statutory Classification

Middle-tier scrutiny requires that a statutory classification must be "`reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation'." Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971), quoting Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). See Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); Califano v. Webster, 430 U.S. 313, 316-17, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977); White v. Fleming, 522 F.2d 730, 734-35 (7th Cir. 1975). The court must therefore ascertain the object of this legislation and determine whether this classification bears a substantial relation to this objective.[5]
The legislative discrimination must be evaluated in light of the primary purpose of the legislative scheme of which it is a part. Weinberger v. Weisenfield, 420 U.S. 636, 645, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1976). The legislative history of this statute indicates that the $25 per month stipend to residents of public institutions was intended to enable them to purchase small comfort items not provided by the institution. 1972 U.S.Code Cong. and Admin. News pp. 4989, 5136. This history reveals no articulated legislative intent to exclude inmates of mental health institutions from these benefits, nor can this court conceive of a possible unexpressed purpose for the exclusion. It would seem that aged, blind, and disabled inmates of all public institutions would have similar needs. Indeed, the legislative history shows that the only group Congress expressly focused on excluding from these benefits were inmates in penal institutions. Id.
While the legislative history of the SSI statute reveals no express purpose for the use of the Medicaid eligibility scheme, the defendant suggests that it is justified for three reasons: 1) the conservation of federal resources; 2) the concern that federal funds be received on behalf of residents of qualified institutions; and 3) the fact that plaintiffs are not "similarly situated" with Medicaid patients in terms of federal interest and control.
The first of these asserted state interests will not sustain the classification created by the SSI statute. Maintaining fiscal integrity is a legitimate concern of government, but government may not limit its expenditures by making invidious distinctions between classes of its citizens. Graham v. Richardson, 403 U.S. 365, 374-75, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The conservation argument must fail, for the SSI statute has created such an invidious distinction by classifying on the basis of quasi-suspect criteria.
*1054 The remaining two purposes that have been advanced in support of the statute's use of the Medicaid eligibility scheme are similarly unconvincing. The Medicaid statute provides payments to institutions to meet the subsistence needs of eligible individuals. The SSI statute provides supplemental income to the residents of Medicaid-eligible public institutions so that they may purchase personal items. Aged, blind, and disabled residents of public mental health hospitals are equally in need of this monthly stipendthe source of their subsistence payment bears no relation to their need for supplementary income.
A legislative classification that excludes a quasi-suspect group from its benefits "must serve important governmental objectives and must be substantially related to achievement of those objectives." Califano v. Webster, 930 U.S. 313, 316-17, 97 S.Ct. 1192, 1194, 51 L.Ed.2d 360 (1977). The governmental interests that are served by this mental health classification are not of sufficient importance to sustain the exclusion of the Wilson class. The exclusion appears to have been an accidental by-product of the legislative scheme rather than an intended means of achieving a calculated legislative objective.
Accordingly, the Wilson plaintiffs' motion for summary judgment is granted. The section of the Social Security Act that serves to exclude plaintiffs from receipt of SSI benefits is hereby struck down as violative of the Equal Protection Clause, and the defendant shall begin payments under the Act to all eligible inmates of public mental health institutions.

II. THE PRETRIAL DETAINEE EXCLUSION
The Sterling plaintiffs urge that the statute's exclusion of pretrial detainees will not withstand equal protection analysis. To determine the validity of this claim, the court again must apply the test formulated by the Supreme Court. In so doing, the court finds that neither strict scrutiny nor middle-tier scrutiny is the appropriate standard of review for this classification.
The challenged exclusion of the plaintiff class from receipt of the SSI benefit neither abridges a fundamental liberty[6] nor discriminates according to suspect criteria. The Supreme Court has directly held that pretrial detainees are not a suspect class. Goosby v. Osser, 409 U.S. 512, 520, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973), citing McDonald v. Board of Election Commissioners, 394 U.S. 802, 807-08, 89 S.Ct. 1404, 22 L.Ed.2d 739. The Supreme Court has not considered whether quasi-suspect status might apply; this court concludes that such status would be inappropriate for pretrial detainees do not possess the significant indicia of the suspect classes.
The first of these indicia, that a suspect classification is based upon an immutable trait determined by the accident of birth. Frontiero v. Richardson, 411 U.S. 677, 686, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) is not descriptive of pretrial detainees. This class shares a status that arises during the individual's lifetime and is temporary in nature. Neither do pretrial detainees share a second characteristic of the suspect classesthat the common trait bears no relation to the person's ability to contribute to society. See Frontiero, 411 U.S. at 486, 93 S.Ct. 1764. Confinement in a penal institution will prevent the detainee from full participation in societal matters and is based on a determination that is related in some degree to the detainee's prior participation in society. Finally, the fluid class of pretrial detainees cannot claim the history of purposeful inequal treatment that is shared by the suspect groups. See San Antonio School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
The challenged social welfare legislation, therefore, will be sustained if it is shown to bear a rational relation to a legitimate state interest. Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); McDonald, supra, at 809, 89 S.Ct. 1404. This conclusion is supported by the Supreme Court's recent holding in Bell v. *1055 Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Although the Wolfish Court was evaluating the constitutionality of certain conditions of pretrial detention, the Court's refusal to exercise a heightened form of judicial review is applicable here. The court noted that "the determination whether these restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose." 441 U.S. at 560-563, 99 S.Ct. at 1885-1886. The Court's use of the rational relation test in a case involving conditions of confinement supports this court's use of that test in evaluating the exclusion challenged in the present case.
The challenged classification must be upheld under this lower-tier scrutiny. Although pretrial detainees were not singled out for exclusion from the SSI benefit, Congress did express its intent to exclude the inmates in penal institutions. See 1972 U.S.Code Cong. and Admin. News p. 5136. Thus, the classification challenged by the Sterling plaintiffs does not appear to contravene the legislative purpose. Further, the exclusion of these detainees from the small benefit being received by residents of Medicaid-eligible institutions is not the result of an irrational and invidious legislative choice. See Jefferson v. Hackney, 406 U.S. 535, 546, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972). The detainee status is necessarily temporary in nature, and the defendant could legitimately wish to withhold these extra-subsistence payments while the detainee is housed in a public institution and until his future status is determined.
Accordingly, the exclusion of pretrial detainees from SSI benefits is sustained, and the Sterling action is dismissed.
IT IS SO ORDERED.
NOTES
[1] 42 U.S.C. § 1382(e)(1)(A) provides:

Limitation on eligibility of certain individuals:
Except as provided in subparagraph (B) no person shall be an eligible individual or eligible spouse for purposes of this subchapter with respect to any month if throughout such month he is an inmate of a public institution.
42 U.S.C. § 1382(e)(1)(B) provides in pertinent part:
In any case where an eligible individual or his eligible spouse (if any) is, throughout any month, in a hospital extended care facility, nursing home, or intermediate care facility receiving payments (with respect to such individual or spouse) under a State plan approved under subchapter XIX of this chapter, the benefit under this subchapter for such individual for such month shall be payable (i) at a rate not in excess of $300 per year [$25.00 per month].
The Title XIX program referred to in section 1382(e)(1)(B) is the Medicaid Program.
Benefits available under Medicaid include: in-patient hospital services (other than services in an institution for tuberculosis or mental disease) in both public and private hospitals.
skilled nursing home services.
intermediate care facility services, including services in public institutions for the mentally retarded.
in-patient hospital services and skilled nursing home services for individuals 65 years of age or over in an institution for tuberculosis or mental diseases.
in-patient psychiatric hospital services for individuals under age 21.
42 U.S.C. § 1396d(a)(1), (4), (14), (15), (16).
[2] Full SSI benefits payable to an individual with no other source of income were $146 a month at the time of the statute's 1974 enactment and have since increased with cost-of-living adjustments. 42 U.S.C. § 1382(b)(1).
[3] There has been no infringement of a fundamental interest in the present case. See Flemming v. Nestor, 363 U.S. 603, 610-11, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).
[4] The Supreme Court has made a summary affirmance of a district court decision upholding the exclusion of persons under the age of sixty-five from Medicaid and Medicare coverage of in-patient mental hospital treatment. Legion v. Richardson, 354 F.Supp. 456 (S.D.N. Y.1973), aff'd 414 U.S. 1058, 94 S.Ct. 564, 38 L.Ed.2d 465 (1973). However, the precedential effect of a summary affirmance extends no further than the precise issues presented and necessarily decided by the action of the lower court. Ill. State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 174, 99 S.Ct. 983, 985, 59 L.Ed.2d 230 (1979); Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977). The district court never discussed whether the mental illness classification demanded heightened judicial scrutiny. Further, the lower court cited legislative history to show Congressional awareness that the care of the mentally ill in state hospitals was historically the responsibility of the states. 354 F.Supp. at 459, citing 1965 U.S.Code Cong. and Admin. News, p. 2086.
[5] See note, Legislative Purpose, Rationality, and Equal Protection, 82 Yale L.J. 123 (1973) (discussing means-end scrutiny).
[6] See Flemming v. Nestor, 363 U.S. 603, 610-11, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).